UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

|  |  |  |
|---|---|---|
| ROBIN ENRIQUE MOLINA, ALEXANDER FRANCO ARANGO, CASTRO HERNANDEZ BREINER ANDRES, GLORIA MABEL ALVARENGA YANEZ, JOSUE CUEVAS, JUAN PABLO CASTILLO MARCA, LIZ NATALIA ALVARENGA PEREIRA, MANUEL ANDRES MARTINEZ RUIZ, SEBASTIAN IGNACIO VEAS DIAZ, WILFREDO RAMOS ORTIZ, BETZABETH THALÍA URRUTIA FERNANDEZ, AND CARLOS ALMARZA, | : : : : : : : : : : : : | Civil Action No. 1:22-cv-00864 (DG) (TAM) **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| Plaintiffs, | : : |  |
| -against- |  |  |
| RICHARD XIA, a/k/a YI XIA, FLEET FINANCIAL GROUP, INC., X & Y DEVELOPMENT GROUP, LLC, PERINI GROUP, INC., AND GOTHAM FRAMING, INC. |  |  |
| Defendants. |  |  |

-------------------------------------------------------------

Plaintiffs Robin Enrique Molina, Alexander Franco Arango, Castro Hernandez

Breiner Andres, Gloria Mabel Alvarenga Yanez, Josue Cuevas, Juan Pablo Castillo

Marca, Liz Natalia Alvarenga Pereira, Manuel Andres Martinez Ruiz, Sebastian Ignacio

Veas Diaz, Wilfredo Ramos Ortiz, Betzabeth Thalía Urrutia Fernandez, and Carlos

Almarza (collectively "Plaintiffs"), by and through their undersigned attorneys, bring this

action under federal and state labor laws to recover Plaintiffs' lawful wages arising out of

their employment by Richard Xia a/k/a Yi Xia, Fleet Financial Group, Inc., X & Y

Development Group, LLC, Perini Group, Inc., and Gotham Framing, Inc. (collectively

"Defendants") plus liquidated and other damages, interest, attorneys' fees, and the costs of this action.

## PRELIMINARY STATEMENT

1.     Plaintiffs contend that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, et seq. ("FLSA") by knowingly requiring, suffering or permitting the Plaintiffs to work more than 40 hours per week without properly paying them overtime wages, by not paying the Plaintiff workers at all for working on certain days, thereby not paying the workers the federal minimum wage, and retaliating against certain workers when the workers demanded their unpaid wages from Defendants.

2.     Plaintiffs were employed as construction workers at 42-31 Union Street, Flushing, New York, 11355 by Defendants.

3.     The Defendants were building a mixed-use tower building called the Eastern Mirage at 42-31 Union Street in Flushing, New York that includes a hotel and a medical center, which is located in the Borough of Queens, County of Queens, State of New York and identified by the Tax Maps as Queens Block No. 5181, Lot No. 15 (the "Property").

4.     Plaintiffs worked for Defendants in December 2019 and/or January 2020.

5.     The Plaintiffs' work schedule varied but they consistently worked in excess of 40 hours per week and the Defendants failed to pay the Plaintiffs their lawfully due overtime wages.

6.     The Defendants refused to pay the Plaintiffs at all for at least two full weeks of work performed in the weeks around Christmas 2019.

7.      This action further invokes the supplemental jurisdiction of this Court to raise claims arising under New York Labor Law ("NYLL") (e.g., New York Wage Payment Act; NYLL §§ 191, 193, 195, 215 and 12 N.Y.C.R.R. Part 142) and Article 2 of the New York State Lien Law ("Lien Law").

8.      Plaintiffs bring claims that the Defendants willfully failed to pay them minimum wages in violation of the FLSA and the NYLL.

9.      Plaintiffs bring claims that Defendants willfully failed to pay them overtime wages in violation of the FLSA and the NYLL.

10.     Plaintiffs bring claims that Defendants failed to provide wage notice and wage statements in violation of the NYLL.

11.     Plaintiffs bring claims that Defendants engaged in retaliation in violation of the FLSA and NYLL by calling the police on the workers who demanded to be paid their unpaid wages, barring the workers who demanded their unpaid wages from the construction worksite, and firing the workers in response to their requests to be paid their lawfully due wages.

12.     Plaintiffs bring claims to foreclose Notice of Mechanic's Liens ("Liens") that were properly filed with the Office of the Clerk of the County of Queens and which duly complied with the statues of the State of New York.

13.     As a result of the foregoing, Plaintiffs seek damages in the form of unpaid minimum and overtime wages, unpaid spread of hours wages, back pay, emotional distress damages, liquidated damages, statutory damages, costs, expenses, and reasonable attorneys' fees under the foregoing laws.

14.     As stated herein, Defendants' conduct and practices constituted violations of federal and state labor laws relating to: (i) minimum wage; (ii) overtime pay; (iii) retaliation; and (iv) failure to provide Plaintiffs with proper notices of hire and wage statements.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction over the Plaintiffs' federal claims pursuant to the FLSA 29 U.S.C. §§ 201 et seq., 29 U.S.C. § 216 (FLSA actions "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction") and 28 U.S.C. § 1331 (federal question jurisdiction).

16.     The Court has supplemental jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367 (because those claims arise out of the same common nucleus of operative facts and are parts of the same case or controversy as Plaintiffs' federal claims).

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Defendants transact business and have agents in the Eastern District and are otherwise within this Court's jurisdiction for purposes of service of process. Defendants operate facilities and employed Plaintiffs in this judicial district.

18.     This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, inter alia, Defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by

the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

## STATUTE OF LIMITATIONS

19.     On March 20, 2020, New York State Governor Andrew Cuomo issued Executive Order 202.8, which suspended and tolled "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including... the civil practice law and rules."

20.     Subsequently, Governor Cuomo extended such tolling through Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67, the last of which extended such tolling through November 3, 2020.

21.     As a result of the Executive Orders, there was a 229-day tolling period for any claims and filings made under New York laws (the number of days between March 20, 2020 and November 4, 2020). *See Brash v. Richards*, 149 N.Y.S.3d 560, 563 (2d Dep't 2021).

22.     Under the NYLL, the period during which the Plaintiffs may claim wage and recordkeeping damages is six years. NYLL §§ 198(3), 663(3).

23.     Under the NYLL, the period during which Plaintiffs may claim damages for retaliation is two years. NYLL § 215(2)(a).

24.     Because of the 229-day period during which all time limits for claims and filings under New York State law were tolled, the recoverable period under the NYLL for

wage and recordkeeping violations is a period of six years and 229 days back from the date of the filing of this complaint, and thus, runs from Thursday, July 2, 2015 to date.

25. Because of the 229-day period during which all time limits for claims and filings under New York State law were tolled, the recoverable period under the NYLL for retaliation violations is a period of two years and 229 days back from the date of the filing of this complaint, and thus, runs from Tuesday, July 2, 2019 to date.

## THE PARTIES

### Plaintiffs

26. Plaintiff Robin Enrique Molina is an adult individual who currently resides in the County of Queens in New York.

27. Plaintiff Robin Enrique Molina was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from approximately December 4, 2019 through January 8, 2020.

28. Plaintiff Alexander Franco Arango is an adult individual who currently resides in the County of Queens in New York.

29. Plaintiff Alexander Franco Arango was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from approximately December 4, 2019 through January 8, 2020.

30. Plaintiff Castro Hernandez Breiner Andres is an adult individual who currently resides in the County of Queens in New York.

31.     Plaintiff Castro Hernandez Breiner Andres was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from approximately December 7, 2019 through January 8, 2020.

32.     Plaintiff Gloria Mabel Alvarenga Yanez is an adult individual who currently resides in the County of Queens in New York.

33.     Plaintiff Gloria Mabel Alvarenga Yanez was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from approximately December 11, 2019 through January 3, 2020.

34.     Plaintiff Josue Cuevas is an adult individual who currently resides in the County of Queens in New York.

35.     Plaintiff Josue Cuevas was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York Eastern Mirage at 42-31 Union Street in Flushing, New York from approximately December 4, 2019 through January 8, 2020.

36.     Plaintiff Juan Pablo Castillo Marca is an adult individual who currently resides in the County of Bronx in New York.

37.     Plaintiff Juan Pablo Castillo Marca was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from approximately December 4, 2019 through December 30, 2019.

38.     Plaintiff Liz Natalia Alvarenga Pereira is an adult individual who currently resides in the County of Queens in New York.

39.     Plaintiff Liz Natalia Alvarenga Pereira was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from approximately December 11, 2019 through January 3, 2020.

40.     Plaintiff Manuel Andres Martinez Ruiz is an adult individual who currently resides in the County of Marion in Indiana.

41.     Plaintiff Manuel Andres Martinez Ruiz was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from approximately December 4, 2019 through December 14, 2019.

42.     Plaintiff Sebastian Ignacio Veas Diaz is an adult individual who currently resides in the country of Chile.

43.     Plaintiff Sebastian Ignacio Veas Diaz was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from approximately December 9, 2019 through December 31, 2019.

44.     Plaintiff Wilfredo Ramos Ortiz is an adult individual who currently resides in the County of Queens in New York.

45.     Plaintiff Wilfredo Ramos Ortiz was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31

Union Street in Flushing, New York from approximately December 4, 2019 through December 14, 2019.

46.     Plaintiff Betzabeth Thalía Urrutia Fernandez is an adult individual who currently resides in the County of Fairfield in Connecticut.

47.     Plaintiff Betzabeth Thalía Urrutia Fernandez was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from December 14, 2019 through December 23, 2019.

48.     Plaintiff Carlos Almarza is an adult individual who currently resides in the County of Queens in New York.

49.     Plaintiff Carlos Almarza was employed by the Defendants as a construction worker at the development/building site for the Eastern Mirage at 42-31 Union Street in Flushing, New York from December 3, 2019 through January 3, 2020.

50.     At all times relevant to this action, the Plaintiffs were non-exempt employees of the Defendants within the meaning of the FLSA and the New York Labor Law ("NYLL").

**Defendants**

51.     Upon information and belief, the individual Defendant, RICHARD XIA, a/k/a YI XIA, is the co-owner, CEO, President, and Managing Member of Defendant Fleet Financial Group, Inc., as well as controls and owns Defendants X&Y Development Group, LLC and Perini Group, Inc.

52.     Upon information and belief, the individual Defendant, RICHARD XIA,

a/k/a YI XIA, maintains an executive office at 136-20 38th Avenue, Suite 10F, Flushing, NY, United States, 11354.

53.     The Individual Defendant Xia is an owner, officer, and/or manager of the Corporate Defendants X&Y Development Group, LLC, Fleet Financial Group, Inc., and Perini Group, Inc., as well as owner of the Property.

54.     The Individual Defendant Xia possessed the authority to hire and fire employees, supervised their work schedules, set their rates of pay, and maintained payroll records.

55.     Corporate Defendant X & Y DEVELOPMENT GROUP, LLC ("X&Y") was and/or is a domestic limited liability company duly organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 136-20 38th Avenue, Suite 10F, Flushing, NY, United States, 11354.

56.     Upon information and belief, Fleet was formed by Individual Defendant Xia on or about September 20, 2017 and is owned and controlled by Individual Defendant Xia.

57.     Further upon information and belief, Defendant X&Y held and holds an ownership interest in the real property located at 42-31 Union Street, Flushing, New York 11355, Borough of Queens, County of Queens, State of New York and identified by the Tax Maps as Queens Block No. 5181, Lot No. 15 (the "Property").

58.     Corporate Defendant FLEET FINANCIAL GROUP, INC. ("Fleet") was and/or is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 136-

20 38th Avenue, Suite 10F, Flushing, NY, United States, 11354.

59.    Upon information and belief, Fleet was formed by individual Defendant Xia on or about February 5, 2010.

60.    Further upon information and belief, Defendant Fleet held and holds an ownership interest in the real property located at 42-31 Union Street, Flushing, New York 11355, Borough of Queens, County of Queens, State of New York and identified by the Tax Maps as Queens Block No. 5181, Lot No. 15.

61.    Corporate Defendant PERINI GROUP, INC. ("Perini") was and/or is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 400 5th Avenue, 49F, New York, NY, United States, 10018.

62.    Upon information and belief, Perini was formed by individual Defendant Xia on or about February 5, 2010 and is controlled by Xia.

63.    Corporate Defendant GOTHAM FRAMING INC. ("Gotham Framing") is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 121-49 6th Avenue, Flr 2, College Point, NY, United States, 11356.

64.    Upon information of belief, at all times relevant hereto, the Corporate Defendants have each been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.

65.    The Corporate Defendants X&Y, Fleet, and Perini operate as a single integrated enterprise in the construction industry.

66.     Defendants constitute an enterprise within the meaning of the FLSA 29 U.S.C. § 203(r).

67.     Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" constituting an enterprise engaged in interstate "commerce" and/or in the production for "commerce" and/or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of the FLSA. 29 U.S.C. §§ 203(r), 203(s).

68.     The FLSA applies to employees who are subject to either individual coverage or enterprise coverage. 29 U.S.C. §§ 206(a), 207(a).

69.     At all relevant times hereto, Plaintiffs were engaged in interstate "commerce" within the meaning of the FLSA.

70.     Defendants jointly employed Plaintiffs at all relevant times.

71.     Defendants have had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

72.     Defendants are part of a single integrated enterprise that jointly employed Plaintiffs at all relevant times.

73.     Defendant Gotham Framing was hired as a sub-contractor by Defendants X&Y, Fleet, Perini, and Xia.

74.     Xia, X&Y, and Fleet are the owners of the Property.

75.     Perini was the putative General Contractor building the Eastern Mirage on the Property site.

76.     Upon information and belief, X&Y, Fleet, and Perini are all fully owned and controlled by Xia.

77.     Using X&Y, Fleet, and Perini, and the employees of these entities, Xia controlled all construction on the Property.

78.     Gotham Framing was contracted by Xia, X&Y, Fleet, and Perini to provide construction work personnel to perform works at the Property.

79.     Gotham Framing was involved in the joint hiring, joint supervision, and joint payment of each Plaintiff.

80.     Gotham Framing employees Junior Santos Sanchez and another employee named "Byron" LNU (last name unknown) acted as foremen for Defendants X&Y, Fleet, Perini, and Xia at the worksite located at the Property.

81.     Defendants X&Y, Fleet, Perini, and Xia directly supervised each of the Defendants' work.

82.     Jinwei "Eric" Sun, Construction Project Coordinator for Fleet held daily meetings with the Defendants to direct and supervise the Defendants' work.

83.     Jinwei "Eric" Sun directed the Defendants on what tasks they had to perform and on which floor.

84.     Fleet's supervisory meetings with the Defendants were held in the offices of Defendants X&Y, Fleet, Perini, and Xia.

85.     Defendants X&Y, Fleet, Perini, and Xia were present at the worksite each day and supervised the work performed by Defendants.

86.     Defendant Xia and the Corporate Defendants controlled by him, refused to

pay the Plaintiffs their wages in December 2019 and January 2020.

87.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

## NATURE OF THE ACTION

88.     As described herein, Defendants knowingly engaged in unlawful business practices by requiring employees to work numerous hours of overtime on a weekly basis without overtime compensation.

89.     Plaintiffs bring this action (a) pursuant to the FLSA and the regulations thereto; and (b) pursuant to the NYLL (§650 *et seq*.) upon the following acts and/or omissions which Defendants committed:

       i.   Defendants' willful failure to pay any wages for weeks of work performed by the Plaintiffs during December 2019 and January 2020;

      ii.   Defendants' willful failure to pay overtime compensation required by federal and state law and regulations to Plaintiffs who worked in excess of forty (40) hours per week;

     iii.   Defendants' willful failure to provide Plaintiffs with a wage notice and paystubs as required by NYLL § 195;

     iv.   Defendants retaliatory actions taken on or about January 8, 2020 in response to Plaintiffs' request to be paid their overdue wages.

90.     Defendants have knowingly and willfully engaged in a policy, pattern, or practice of violating the FLSA and NYLL, as detailed in this Complaint.

91.    Defendants willfully failed to provide Plaintiffs with written notices, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day and such information as required by NYLL § 195(3) and/or 198(1-b).

92.    Defendants failed to provide Plaintiffs with paystubs specifying the overtime hours they worked and the proper overtime rate, as required under NYLL § 195.

93.    Defendants willfully disregarded and purposefully evaded the recordkeeping requirements of the FLSA and the NYLL and supporting regulations during their employment of the Plaintiffs.

94.    On or about February 28, 2020, within eight months after the last item of labor and services were performed, each of the Plaintiffs, with the exception of Plaintiffs Betzabeth Thalía Urrutia Fernandez and Carlos Almarza, filed or caused to be filed in the Office of the Clerk of the County of Queens, State of New York, a Notice Under Mechanic's Lien Law against the Property in the amount of wages due to them under the NYLL (the "Liens").

95.    No part of said Liens have been paid, waived, cancelled, or discharged by payment, and no prior proceeding either at law or in equity have ever been brought to recover and part of said lien or claim against which it is founded.

### **Unpaid Wages and Overtime Violations**

**(a) Robin Enrique Molina**

96.    Plaintiff Robin Enrique Molina began working with the Defendants on or about December 4, 2019 and continued working for the Defendants until on or about January 8, 2020.

97.     During his employment, Plaintiff Robin Enrique Molina worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

98.     Plaintiff Molina's primary work responsibilities consisted of installing sheetrock, plastering, and framing but he performed other construction roles.

99.     Plaintiff Molina was hired by the Defendants at a rate of $25 per hour.

100.    Plaintiff Molina's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

101.    Work shifts typically covered approximately 9 working hours.

102.    Certain shifts lasted longer than 9 hours.

103.    Plaintiff Molina also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

104.    On at least one occasion, Plaintiff Molina worked more than 40 hours per week, but he was only paid at his hourly rate of pay for all of the hours he worked.

105.    The Defendants never paid Plaintiff Molina at a rate of time and a half for the additional hours he worked past 40 hours during his workweeks.

106.    Plaintiff Molina was not paid at all for his last four weeks of work.

107.    Plaintiff Molina is owed wages for the work he performed during the weeks beginning Sunday, December 15, 2019, through the week beginning Sunday, January 5, 2020.

108.    Plaintiff Molina also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

109.    Plaintiff Molina requested that Defendants pay him his wages that were

due for the days that he worked but was not paid for, but Defendants refused to pay him.

**(b) Alexander Franco Arango**

110.     Plaintiff Alexander Franco Arango began working with the Defendants on or about December 4, 2019, and continued working for the Defendants until on or about January 8, 2020.

111.     During his employment, Plaintiff Alexander Franco Arango worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

112.     Plaintiff Franco Arango's primary work responsibilities consisted of installing sheetrock, plastering, and installing lights but he performed other construction roles.

113.     Plaintiff Franco Arango was hired by the Defendants at a rate of $25 per hour.

114.     Plaintiff Franco Arango's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

115.     Work shifts typically covered approximately 9 working hours.

116.     Certain shifts lasted longer than 9 hours.

117.     Plaintiff Franco Arango also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

118.     On at least one occasion, Plaintiff Franco Arango worked more than 40 hours per week, but he was only paid at his hourly rate of pay for all of the hours he worked.

119.     The Defendants never paid Plaintiff Franco Arango at a rate of time and a

half for the additional hours he worked past 40 hours during his workweeks.

120.     Plaintiff Franco Arango was not paid at all for his last three weeks of work.

121.     Plaintiff Franco Arango is owed wages for the work he performed during the weeks beginning Sunday, December 15, 2019, through the week beginning Sunday, December 29, 2020.

122.     Plaintiff Franco Arango also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

123.     Plaintiff Franco Arango requested that Defendants pay him his wages that were due for the days that he worked but was not paid for, but Defendants refused to pay him.

**(c) Castro Hernandez Breiner Andres**

124.     Plaintiff Castro Hernandez Breiner Andres began working with the Defendants on or about December 7, 2019, and continued working for the Defendants until on or about January 8, 2020.

125.     During his employment, Plaintiff Castro Hernandez Breiner Andres worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

126.     Plaintiff Breiner Andres's primary work responsibilities consisted of installing sheetrock, plastering, and installing lights but he performed other construction roles.

127.     Plaintiff Breiner Andres was hired by the Defendants at a rate of $25 per hour.

128.     Plaintiff Breiner Andres's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

129.     Work shifts typically covered approximately 9 working hours.

130.     Certain shifts lasted longer than 9 hours.

131.     Plaintiff Breiner Andres also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

132.     On at least one occasion, Plaintiff Breiner Andres worked more than 40 hours per week, but he was only paid at his hourly rate of pay for all of the hours he worked.

133.     The Defendants never paid Plaintiff Breiner Andres at a rate of time and a half for the additional hours he worked past 40 hours during his workweeks.

134.     Plaintiff Breiner Andres was not paid at all for his last three weeks of work.

135.     Plaintiff Breiner Andres is owed wages for the work he performed during the weeks beginning Sunday, December 15, 2019, through the week beginning Sunday, December 29, 2020.

136.     Plaintiff Breiner Andres also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

137.     Plaintiff Breiner Andres requested that Defendants pay him his wages that were due for the days that he worked but was not paid for, but Defendants refused to pay him.

### (d) Gloria Mabel Alvarenga Yanez

138.    Plaintiff Gloria Mabel Alvarenga Yanez began working with the Defendants on or about December 11, 2019, and continued working for the Defendants until on or about January 3, 2020.

139.    During her employment, Plaintiff Gloria Mabel Alvarenga Yanez worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

140.    Plaintiff Alvarenga Yanez's primary work responsibilities consisted of plastering and taping but she performed other construction roles.

141.    Plaintiff Alvarenga Yanez was hired by the Defendants at a rate of $22 per hour.

142.    Plaintiff Alvarenga Yanez's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

143.    Work shifts typically covered approximately 9 working hours.

144.    Certain shifts lasted longer than 9 hours.

145.    Plaintiff Alvarenga Yanez also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

146.    On at least one occasion, Plaintiff Alvarenga Yanez worked more than 40 hours per week, but she was only paid at her hourly rate of pay for all of the hours he worked.

147.    The Defendants never paid Plaintiff Alvarenga Yanez at a rate of time and a half for the additional hours she worked past 40 hours during her workweeks.

148.    Plaintiff Alvarenga Yanez was not paid at all for her last three weeks of

work.

149.    Plaintiff Alvarenga Yanez is owed wages for the work she performed during the weeks beginning Sunday, December 15, 2019, through the week beginning Sunday, December 29, 2020.

150.    Plaintiff Alvarenga Yanez also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

151.    Plaintiff Alvarenga Yanez requested that Defendants pay her his wages that were due for the days that she worked but was not paid for, but Defendants refused to pay her.

**(e) Josue Cuevas**

152.    Plaintiff Josue Cuevas began working with the Defendants on or about December 4, 2019, and continued working for the Defendants until on or about January 8, 2020.

153.    During his employment, Plaintiff Josue Cuevas worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

154.    Plaintiff Cuevas's primary work responsibilities consisted of installing sheetrock and other construction work.

155.    Plaintiff Cuevas was hired by the Defendants at a rate of $25 per hour.

156.    Plaintiff Cuevas's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

157.    Work shifts typically covered approximately 9 working hours.

158.    Certain shifts lasted longer than 9 hours.

159.	Plaintiff Cuevas also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

160.	On at least one occasion, Plaintiff Cuevas worked more than 40 hours per week, but he was only paid at his hourly rate of pay for all of the hours he worked.

161.	The Defendants never paid Plaintiff Cuevas at a rate of time and a half for the additional hours he worked past 40 hours during his workweeks.

162.	Plaintiff Cuevas was not paid at all for his last four weeks of work.

163.	Plaintiff Cuevas is owed wages for the work he performed during the weeks beginning Sunday, December 15, 2019, through the week beginning Sunday, December 29, 2020.

164.	Plaintiff Cuevas also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

165.	Plaintiff Cuevas requested that Defendants pay him his wages that were due for the days that he worked but was not paid for, but Defendants refused to pay him.

**(f)  Juan Pablo Castillo Marca**

166.	Plaintiff Juan Pablo Castillo Marca began working with the Defendants on or about December 4, 2019, and continued working for the Defendants until on or about December 30, 2019.

167.	During his employment, Plaintiff Juan Pablo Castillo Marca worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

168.	Plaintiff Castillo Marca's primary work responsibilities consisted of installing sheetrock and other construction work.

169.     Plaintiff Castillo Marca was hired by the Defendants at a rate of $25 per hour.

170.     Plaintiff Castillo Marca's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

171.     Work shifts typically covered approximately 9 working hours.

172.     Certain shifts lasted longer than 9 hours.

173.     Plaintiff Castillo Marca also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

174.     On at least one occasion, Plaintiff Castillo Marca worked more than 40 hours per week, but he was only paid at his hourly rate of pay for all of the hours he worked.

175.     The Defendants never paid Plaintiff Castillo Marca at a rate of time and a half for the additional hours he worked past 40 hours during his workweeks.

176.     Plaintiff Castillo Marca was not paid at all for his last three weeks of work.

177.     Plaintiff Castillo Marca is owed wages for the work he performed during the weeks beginning Sunday, December 15, 2019, through the week beginning Sunday, December 29, 2020.

178.     Plaintiff Cuevas also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

179.     Plaintiff Cuevas requested that Defendants pay him his wages that were due for the days that he worked but was not paid for, but Defendants refused to pay him.

**(g) Liz Natalia Alvarenga Pereira**

180.    Plaintiff Liz Natalia Alvarenga Pereira began working with the Defendants on or about December 11, 2019, and continued working for the Defendants until on or about January 3, 2020.

181.    During her employment, Plaintiff Liz Natalia Alvarenga Pereira worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

182.    Plaintiff Alvarenga Pereira's primary work responsibilities consisted of plastering and taping but she performed other construction roles.

183.    Plaintiff Alvarenga Pereira was hired by the Defendants at a rate of $22 per hour.

184.    Plaintiff Alvarenga Pereira's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

185.    Work shifts typically covered approximately 9 working hours.

186.    Certain shifts lasted longer than 9 hours.

187.    Plaintiff Alvarenga Pereira also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

188.    On at least one occasion, Plaintiff Alvarenga Pereira worked more than 40 hours per week, but she was only paid at her hourly rate of pay for all of the hours he worked.

189.    The Defendants never paid Plaintiff Alvarenga Pereira at a rate of time and a half for the additional hours she worked past 40 hours during her workweeks.

190.    Plaintiff Alvarenga Pereira was not paid at all for her last three weeks of

work.

191.    Plaintiff Alvarenga Pereira is owed wages for the work she performed during the weeks beginning Sunday, December 15, 2019, through the week beginning Sunday, December 29, 2020.

192.    Plaintiff Alvarenga Pereira also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

193.    Plaintiff Alvarenga Pereira requested that Defendants pay her his wages that were due for the days that she worked but was not paid for, but Defendants refused to pay her.

### (h)  Manuel Andres Martinez Ruiz

194.    Plaintiff Manuel Andres Martinez Ruiz began working with the Defendants on or about December 4, 2019, and continued working for the Defendants until on or about December 14, 2019.

195.    During his employment, Plaintiff Manuel Andres Martinez Ruiz worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

196.    Plaintiff Martinez Ruiz's primary work responsibilities consisted of installing sheetrock and other construction work.

197.    Plaintiff Martinez Ruiz was hired by the Defendants at a rate of $22 per hour.

198.    Plaintiff Martinez Ruiz's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

199.    Work shifts typically covered approximately 9 working hours.

200.    Certain shifts lasted longer than 9 hours.

201.    Plaintiff Martinez Ruiz also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

202.    On at least one occasion, Plaintiff Martinez Ruiz worked more than 40 hours per week, but he was only paid at his hourly rate of pay for all of the hours he worked.

203.    The Defendants never paid Plaintiff Martinez Ruiz at a rate of time and a half for the additional hours he worked past 40 hours during his workweeks.

204.    Plaintiff Martinez Ruiz was not paid at all for his last two weeks of work.

205.    Plaintiff Martinez Ruiz is owed wages for the work he performed during the weeks beginning Sunday, December 1, 2019 and the week beginning Sunday, December 8, 2020.

206.    Plaintiff Martinez Ruiz also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

207.    Plaintiff Martinez Ruiz requested that Defendants pay him his wages that were due for the days that he worked but was not paid for, but Defendants refused to pay him.

**(i)  Sebastian Ignacio Veas Diaz**

208.    Plaintiff Sebastian Ignacio Veas Diaz began working with the Defendants on or about December 9, 2019, and continued working for the Defendants until on or about December 31, 2019.

209.    During his employment, Plaintiff Sebastian Ignacio Veas Diaz worked at

the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

210.    Plaintiff Veas Diaz's primary work responsibilities consisted of installing sheetrock and other construction work.

211.    Plaintiff Veas Diaz was hired by the Defendants at a rate of $22 per hour.

212.    Plaintiff Veas Diaz's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

213.    Work shifts typically covered approximately 9 working hours.

214.    Certain shifts lasted longer than 9 hours.

215.    Plaintiff Veas Diaz also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

216.    On at least one occasion, Plaintiff Veas Diaz worked more than 40 hours per week, but he was only paid at his hourly rate of pay for all of the hours he worked.

217.    The Defendants never paid Plaintiff Veas Diaz at a rate of time and a half for the additional hours he worked past 40 hours during his workweeks.

218.    Plaintiff Veas Diaz was not paid at all for his last three weeks of work.

219.    Plaintiff Veas Diaz is owed wages for the work he performed during the weeks beginning Sunday, December 15, 2019, through the week beginning Sunday, December 29, 2020.

220.    Plaintiff Veas Diaz also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

221.    Plaintiff Veas Diaz requested that Defendants pay him his wages that were due for the days that he worked but was not paid for, but Defendants refused to pay him.

**(j) Wilfredo Ramos Ortiz**

222.     Plaintiff Wilfredo Ramos Ortiz began working with the Defendants on or about December 4, 2019, and continued working for the Defendants until on or about December 14, 2019.

223.     During his employment, Plaintiff Wilfredo Ramos Ortiz worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

224.     Plaintiff Ramos Ortiz's primary work responsibilities consisted of carpentry and other construction work.

225.     Plaintiff Ramos Ortiz was hired by the Defendants at a rate of $22 per hour.

226.     Plaintiff Ramos Ortiz's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

227.     Work shifts typically covered approximately 9 working hours.

228.     Certain shifts lasted longer than 9 hours.

229.     Plaintiff Ramos Ortiz also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

230.     On at least one occasion, Plaintiff Ramos Ortiz worked more than 40 hours per week, but he was only paid at his hourly rate of pay for all of the hours he worked.

231.     The Defendants never paid Plaintiff Ramos Ortiz at a rate of time and a half for the additional hours he worked past 40 hours during his workweeks.

232.     Plaintiff Ramos Ortiz was not paid at all for his last week of work.

233.    Plaintiff Ramos Ortiz is owed wages for the work he performed during the week beginning Sunday, December 8, 2020.

234.    Plaintiff Ramos Ortiz also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

235.    Plaintiff Ramos Ortiz requested that Defendants pay him his wages that were due for the days that he worked but was not paid for, but Defendants refused to pay him.

**(k) Betzabeth Thalía Urrutia Fernandez**

236.    Plaintiff Betzabeth Thalía Urrutia Fernandez began working with the Defendants on or about December 14, 2019, and continued working for the Defendants until on or about December 23, 2019.

237.    During her employment, Plaintiff Betzabeth Thalía Urrutia Fernandez worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

238.    Plaintiff Urrutia Fernandez's performed construction work.

239.    Plaintiff Urrutia Fernandez was hired by the Defendants at a rate of $15 per hour.

240.    Plaintiff Urrutia Fernandez's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

241.    Work shifts typically covered approximately 9 working hours.

242.    Certain shifts lasted longer than 9 hours.

243.    Plaintiff Urrutia Fernandez also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

244. On at least one occasion, Plaintiff Urrutia Fernandez worked more than 40 hours per week, but she was only paid at her hourly rate of pay for all of the hours he worked.

245. The Defendants never paid Plaintiff Urrutia Fernandez at a rate of time and a half for the additional hours she worked past 40 hours during her workweeks.

246. Plaintiff Urrutia Fernandez was not paid at all for her last three weeks of work.

247. Plaintiff Urrutia Fernandez is owed wages for the work she performed during the week beginning Sunday, December 15, 2019 and the week beginning Sunday, December 22, 2020.

248. Plaintiff Urrutia Fernandez also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

249. Plaintiff Urrutia Fernandez requested that Defendants pay her his wages that were due for the days that she worked but was not paid for, but Defendants refused to pay her.

**(l) Carlos Almarza**

250. Plaintiff Carlos Almarza began working with the Defendants on or about December 3, 2019, and continued working for the Defendants until on or about January 3, 2020.

251. During his employment, Plaintiff Carlos Almarza worked at the building site Eastern Mirage at 42-31 Union Street in Flushing, New York.

252. Plaintiff Almarza's primary work responsibilities consisted of installing

sheetrock and other construction work.

253.    Plaintiff Almarza was hired by the Defendants at a rate of $25 per hour.

254.    Plaintiff Almarza's typical work schedule was Monday through Friday from around 7 or 7:30 a.m. until 4-5:00 p.m.

255.    Work shifts typically covered approximately 9 working hours.

256.    Certain shifts lasted longer than 9 hours.

257.    Plaintiff Almarza also worked the same length of time on certain Saturdays, in addition to his Monday through Friday working schedule.

258.    On at least one occasion, Plaintiff Almarza worked more than 40 hours per week, but he was only paid at his hourly rate of pay for all of the hours he worked.

259.    The Defendants never paid Plaintiff Almarza at a rate of time and a half for the additional hours he worked past 40 hours during his workweeks.

260.    Plaintiff Almarza was not paid at all for his last three weeks of work.

261.    Plaintiff Almarza is owed wages for the work he performed during the weeks beginning Sunday, December 15, 2019, through the week beginning Sunday, December 29, 2020.

262.    Plaintiff Almarza also never received a notice of hire nor paystubs fulfilling the requirements of the NYLL.

263.    Plaintiff Almarza requested that Defendants pay him his wages that were due for the days that he worked but was not paid for, but Defendants refused to pay him.

### **Retaliation**

264.    On or about the day of January 8, 2020, Plaintiffs Molina and Cuevas

were still working at the worksite and, during their workday, began demanding from Defendants Gotham Framing, Defendant Xia, and Defendant Fleet the unpaid wages owed to all of the Plaintiffs.

265. Plaintiffs Molina and Cuevas spoke to employees of the Defendants Gotham Framing about obtaining the back wages owed to all of the Plaintiffs.

266. The employees of Defendant Gotham Framing went to speak to Defendant Xia that day to ask that he pay Plaintiffs.

267. Plaintiffs Molina and Cuevas had finished their work for the day, and waited in an office at the worksite for Defendant Xia to pay them.

268. Defendant Xia refused to pay the Plaintiffs.

269. Defendant Xia sent employees of Defendant Gotham Framing to tell Plaintiffs Molina and Cuevas that he refused to pay the Plaintiffs any wage.

270. In a retaliatory action, Defendant Xia also instructed the employees of Defendant Gotham Framing to tell Plaintiffs Molina and Cuevas that work was now canceled for all the Plaintiffs demanding their wages.

271. In reaction to this message from Defendant Xia, Plaintiffs Molina and Cuevas refused to leave the worksite until all the Plaintiffs had been paid their overdue wages.

272. Plaintiffs Molina and Cuevas contacted Plaintiffs Franco Arango and Breiner Andres, who were also present at the worksite, and all four of the Plaintiffs demanded their wages.

273. Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres demanded

to have a sit down with Defendant Xia.

274.    Plaintiff Franco Arango had to leave the worksite at around 7 p.m. but the other workers stayed.

275.    Plaintiffs Molina, Cuevas, and Breiner Andres continued to stay at the worksite until midnight demanding to be speak to Defendant Xia and receive their wages.

276.    In a retaliatory action, Defendants Xia and Fleet had their employee call the police in direct response to this request for unpaid wages.

277.    Plaintiffs Molina, Cuevas, and Breiner Andres were very scared that they would be arrested and charged with a crime when the police arrived.

278.    A number of police officers arrived at the worksite and talked to Plaintiffs Molina, Cuevas, and Breiner Andres.

279.    Eventually, the police officers made the Plaintiffs Molina, Cuevas, and Breiner Andres leave the worksite and told the Plaintiffs to return in the morning.

280.    In a retaliatory action, Defendants Xia and Fleet also ensured that the worksite was locked to Plaintiffs Molina and Cuevas to prevent them from continuing to work.

281.    In a retaliatory action, all of the Plaintiffs were fired and barred from returning to the worksite in retaliation for demanding their unpaid wages.

282.    The Plaintiffs found Defendant Xia's and Defendant Fleet's actions to be vindictive and fear-inducing and were left emotionally harmed.

## Mechanic's Liens

283.    Plaintiffs Robin Enrique Molina, Alexander Franco Arango, Castro

Hernandez Breiner Andres, Gloria Mabel Alvarenga Yanez, Josue Cuevas, Juan Pablo Castillo Marca, Liz Natalia Alvarenga Pereira, Manuel Andres Martinez Ruiz, Sebastian Ignacio Veas Diaz, Wilfredo Ramos Ortiz (collectively "Lienors") performed and furnished labor for use by Defendants X&Y, Fleet, and Xia in the improvement of the Property.

284.    The Lienors' labor was accepted by Defendants X&Y, Fleet, and Xia.

285.    The Lienors performed the last of their labor and improvements of the Property on or about December 2019 and January 2020.

286.    On or about February 28, 2020, within eight (8) months of furnishing the last of his labor and improvements on the Property, the Lienors caused the filing of a Notice of Mechanic's Lien Based on Improvement to Private Property in each of the Lienors' names in amount of the wages due to each respective Lienor with the County Clerk of Queens County.

287.     Plaintiff Robin Enrique Molina's Lien against the Property is in the amount of $3,737.50 was docketed on February 28, 2020, as ML 133/20 in Queens County.

288.    On February 17, 2021, a valid Extension of Mechanic's Lien Based on Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 133/20 with a one-year duration on behalf of Plaintiff Robin Enrique Molina.

289.    Plaintiff Alexander Franco Arango's Lien against the Property is in the amount of $3,900.00 was docketed on February 28, 2020, as ML 124/20 in Queens

County.

290.    On February 17, 2021, a valid Extension of Mechanic's Lien Based on Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 124/20 with a one-year duration on behalf of Plaintiff Alexander Franco Arango.

291.    Plaintiff Castro Hernandez Breiner Andres's Lien against the Property is in the amount of $2,862.50 was docketed on February 28, 2020, as ML 126/20 in Queens County.

292.    On February 17, 2021, a valid Extension of Mechanic's Lien Based on Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 126/20 with a one-year duration on behalf of Castro Hernandez Breiner Andres.

293.    Plaintiff Gloria Mabel Alvarenga Yanez's Lien against the Property is in the amount of $2,431.00 was docketed on February 28, 2020, as ML 129/20 in Queens County.

294.    On February 17, 2021, a valid Extension of Mechanic's Lien Based on Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 129/20 with a one-year duration on behalf of Gloria Mabel Alvarenga Yanez.

295.    Plaintiff Josue Cuevas's Lien against the Property is in the amount of $3,737.50 was docketed on February 28, 2020, as ML 130/20 in Queens County.

296.    On February 17, 2021, a valid Extension of Mechanic's Lien Based on

Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 130/20 with a one-year duration on behalf of Josue Cuevas.

297.    Plaintiff Juan Pablo Castillo Marca's Lien against the Property is in the amount of $2,875.00 was docketed on February 28, 2020, as ML 136/20 in Queens County.

298.    On February 17, 2021, a valid Extension of Mechanic's Lien Based on Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 136/20 with a one-year duration on behalf of Juan Pablo Castillo Marca.

299.    Plaintiff Liz Natalia Alvarenga Pereira's Lien against the Property is in the amount of $2,431.00 was docketed on February 28, 2020, as ML 131/20 in Queens County.

300.    On February 17, 2021, a valid Extension of Mechanic's Lien Based on Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 131/20 with a one-year duration on behalf of Liz Natalia Alvarenga Pereira.

301.    Plaintiff Manuel Andres Martinez Ruiz's Lien against the Property is in the amount of $1,661.00 was docketed on February 28, 2020, as ML 132/20 in Queens County.

302.    On February 17, 2021, a valid Extension of Mechanic's Lien Based on Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 132/20 with a one-year duration on behalf of Manuel Andres

Martinez Ruiz.

303.   Plaintiff Sebastian Ignacio Veas Diaz's Lien against the Property is in the amount of $2,200.00 was docketed on February 28, 2020, as ML 134/20 in Queens County.

304.   On February 17, 2021, a valid Extension of Mechanic's Lien Based on Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 134/20 with a one-year duration on behalf of Sebastian Ignacio Veas Diaz.

305.   Plaintiff Wilfredo Ramos Ortiz's Lien against the Property is in the amount of $1,309.00 was docketed on February 28, 2020, as ML 135/20 in Queens County.

306.   On February 17, 2021, a valid Extension of Mechanic's Lien Based on Improvement to Private Property was filed with the County Clerk of Queens County and docketed as EXT ML 135/520 with a one-year duration on behalf of Wilfredo Ramos Ortiz.

307.   Each of the Lienors has a good, valid, and subsisting lien on the Property.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### *Claims under the Fair Labor Standards Act for Unpaid Minimum Wages*

308.   Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

309.   Defendants were required under 29 U.S.C. §206 (f) to pay Plaintiffs at the

applicable federal minimum wage rate of $7.25 per hour for all hours worked.

310.    Defendants willfully and intentionally failed to pay Plaintiffs the minimum wage she was entitled to receive.

311.    Defendants were aware or should have been aware that the failure to pay the minimum wage as described in this Complaint was unlawful.

312.    Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs.

313.    Defendants also violated the FLSA by failing to properly keep records as required by statute under 29 U.S.C. § 211(c).

314.    As Defendants' violations of the FLSA was willful, a three-year statute of limitations applies under 29 U.S.C. § 255.

315.    For their willful underpayment of wages, Defendants are liable to Plaintiffs for unpaid minimum wage compensation in an amount to be determined at trial and Plaintiffs are entitled to recovery of such amounts, together with liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to 29 U.S.C. §§ 201 et seq.

## SECOND CAUSE OF ACTION

### *Claims under the Fair Labor Standards Act for Unpaid Overtime*

316.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

317.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of 29 U.S.C. § 203.

318.    At all times relevant to this action, Defendants were employers within the meaning of 29 U.S.C. § 207(a).

319.    In the performance of their duties for Defendants, Plaintiffs worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services they provided to Defendants, as required by the FLSA 29 U.S.C. §§ 206 and 207.

320.    The precise number of unpaid overtime hours will be proven at trial.

321.    Defendants willfully failed to pay Plaintiffs overtime wages at a rate of one and one-half times their regular rate of pay, or one and one-half times the applicable minimum wage, for each hour worked in excess of forty hours per week, in violation of 29 U.S.C. § 207(a)(1).

322.    Defendants' violations of the FLSA, as described in this complaint, were willful and intentional.

323.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, pursuant to the FLSA, specifically 29 U.S.C. § 216(b), and/or prejudgment interest, all in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(ON BEHALF OF PLAINTIFFS MOLINA, CUEVAS, FRANCO ARANGO, AND BREINER ANDRES)**

***Claims against Defendants Xia, Fleet, and Gotham Framing under FLSA § 215 for Retaliation***

324.    Plaintiffs reallege and incorporate by reference all the allegations set forth

above.

325.　The retaliation provision of the FLSA makes it "unlawful. . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C 215(a)(3).

326.　Defendants Xia, Fleet, and Gotham Framing have violated FLSA § 215 by subjecting Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres to unlawful retaliation for demanding their unpaid wages and called the police on the Plaintiffs and refused to allow the Plaintiffs to return to work.

327.　As a direct and proximate result of Defendants Xia's, Fleet's, and Gotham Framing's unlawful retaliatory conduct in violation of the FLSA, Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres have suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

328.　Defendants Xia's, Fleet's, and Gotham unlawful retaliatory conduct constitutes a willful and wanton violation of the FLSA, was outrageous and malicious, was intended to injure Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres, and was committed with conscious disregard of Plaintiffs Molina's, Cuevas's, Franco Arango's, and Breiner Andres's rights, entitling Plaintiffs Molina, Cuevas, Franco Arango, and

Breiner Andres to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### *Claims under New York Labor Law for Unpaid Minimum Wages*

329.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

330.     At all relevant times, Plaintiffs were covered by the NYLL and supporting New York State Department of Labor Regulations.

331.     Defendants were required to pay Plaintiffs at the applicable New York State minimum wage rate for all hours worked.

332.     Defendants were required to pay Plaintiffs at an hourly rate of $15.00 per hour under NYLL § 652 and corresponding New York State Department of Labor Regulations, including, but not limited, to 12 N.Y.C.R.R.§ 142-2.1.

333.     Defendants willfully failed to pay Plaintiffs their minimum hourly wages in violation of the NYLL Article 19, §§ 650 et seq., and corresponding New York State Department of Labor Regulations.

334.     For their willful underpayment of wages, Defendants are liable to Plaintiffs for unpaid minimum wage compensation in an amount to be determined at trial.

335.     Plaintiffs are entitled to recovery of such amount, together with liquidated damages, pre-and post-judgment interest, reasonable attorney's fees, and the costs of this action, pursuant to the NYLL § 663.

## FIFTH CAUSE OF ACTION

### *Claims under New York Labor Law (12 N.Y.C.R.R § 142-2.2) for Unpaid Overtime*

336. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

337. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL §§ 2(5), 190(2) and 651(5).

338. At all times relevant to this action, Defendants were employers within the meaning of NYLL §§ 2(6), 190(3) and 651(6).

339. The Defendants willfully failed to pay Plaintiffs overtime wages at a rate of one and one-half times their regular rate of pay, or one and one-half times the applicable minimum wage, for each hour worked in excess of forty hours per week, in violation of the NYLL, including 12 N.Y.C.R.R § 142-2.2.

340. Defendants' violations of the NYLL, as described in the complaint, were willful and intentional.

341. Due to Defendants' violations of NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtimes wages and an equal amount in the form of liquidated damages, as well as attorneys' fees, costs of the action, and prejudgment interest as provided by NYLL § 663, all in an amount to be determined at trial

## SIXTH CAUSE OF ACTION

### *Claim for Defendants' Failure to Provide Paystubs Under New York Labor Law*

342. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

343. At all times relevant to this action, Plaintiffs were employed by

Defendants within the meaning of NYLL §§ 2(5), 190(2) and 651(5).

344. At all times relevant to this action, Defendants were employers within the meaning of NYLL §§ 2(6), 190(3) and 651(6).

345. Defendants failed to provide full and accurate paystubs to Plaintiffs each time Defendants paid wages to Plaintiffs in violation of NYLL § 195(3).

346. Defendants' violations of the NYLL, as described in the complaint, were willful and intentional.

347. Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover damages from Defendants, jointly and severally, as well as reasonable attorneys' fees, costs of the action, and prejudgment interest, all in an amount to be determined at trial. NYLL § 198(1-d).

## SEVENTH CAUSE OF ACTION

### *Claim for Defendants' Failure to Provide Notices Upon Hire Under New York Labor Law*

348. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

349. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL §§ 2(5), 190(2) and 651(5).

350. At all times relevant to this action, Defendants were employers within the meaning of NYLL §§ 2(6), 190(3) and 651(6).

351. Defendants failed to provide Plaintiffs a notice at the time of hire in violation of NYLL § 195(1).

352. Defendants' violations of the NYLL, as described in the complaint, were

willful and intentional.

353.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover damages from Defendants, jointly and severally, as well as reasonable attorneys' fees, costs of the action, and prejudgment interest, all in an amount to be determined at trial.  NYLL § 198(1-b).

## EIGHTH CAUSE OF ACTION

### (ON BEHALF OF PLAINTIFFs MOLINA, CUEVAS, FRANCO ARANGO, AND BREINER ANDRES)

#### *Claim against Defendants Xia, Fleet, and Gotham Framing Under New York Labor Law for Retaliation*

354.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

355.    Plaintiffs are protected from retaliation under NYLL § 215(1)(a), which provides that, "[n]o employer or his or her agent … or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer or to the commissioner, or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner …"

356.    Defendants Xia, Fleet, and Gotham Framing engaged in unlawful retaliation in violation of NYLL § 215 by retaliating against Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres by calling the police on the Plaintiffs and refused to allow the

Plaintiffs to return to work.

357.    As a proximate result of Defendants' retaliation, Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres have suffered damages including emotional distress.

358.    Due to Defendants' violations of the NYLL, Defendants are liable to Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

## NINTH CAUSE OF ACTION

### *Claim Under New York State Lien Law Against the Defendants*
### *(Foreclosure Of Mechanic's Lien)*

359.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

360.    Pursuant to and in accordance with the Lien Laws of the State of New York,  within eight (8) months of furnishing the last of their labors, each of Plaintiffs Robin Enrique Molina, Alexander Franco Arango, Castro Hernandez Breiner Andres, Gloria Mabel Alvarenga Yanez, Josue Cuevas, Juan Pablo Castillo Marca, Liz Natalia Alvarenga Pereira, Manuel Andres Martinez Ruiz, Sebastian Ignacio Veas Diaz, Wilfredo Ramos Ortiz individually caused to be filed with the Office of the Clerk of the County of Queens, a Lienor's Notice Under Mechanic's Lien Law Based on Improvement to Private Real Property against the real property located at 42-31 Union St, Flushing, NY 11355, Block: 05181, Lot: 0015, in writing and in proper and due form, and the same was duly entered and docketed therein.

361.    The Notices of Liens contained all the statements required by and in all respects duly complied with the statues of the State of New York.

362.    Pursuant to Lien Laws of the State of New York, within five days before or thirty days after filing the Notice of Lien, Plaintiff Lienors duly served Defendants X&Y, Fleet, and Xia.

363.    Pursuant to Lien Laws of the State of New York, within thirty-five (35) days of the filing of the Notice of Lien, an affidavit with proof of service as to the certified mailing of copies of the Notice of Lien was filed with the Clerk of the County of Queens.

364.    By reason of the foregoing, Plaintiff Lienors acquired good, valid, and subsisting liens on The Property.

365.    In accordance with the Notice of Lien, the lien amounts were in the amount of wages due for all days of unpaid work due to the Plaintiff Lienors. This lien amount does not include the Plaintiff Lienor's cause of action for retaliation or record keeping violations or for attorneys' fees and costs.

366.    Upon information and belief, no person has any subsequent liens or claims against the Property by way of judgment, mortgage or otherwise.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully requests that judgment be granted:

a.    Awarding Plaintiffs unpaid minimum wages due under the FLSA and the NYLL and its regulations;

b.    Awarding Plaintiffs unpaid overtime wages due under the FLSA and the NYLL and its regulations;

c.     Awarding Plaintiffs damages for Defendants' failure to provide paystubs as required by the NYLL;

d.     Awarding Plaintiffs damages for Defendants' failure to provide a notice upon hire as required by the NYLL;

e.     Awarding Plaintiffs liquidated damages;

f.     Awarding Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres damages due to retaliation;

g.     Awarding Plaintiffs prejudgment and post-judgment interest;

h.     Awarding Plaintiffs, the costs of this action, together with reasonable attorneys' fees;

i.     Permanently enjoining Defendants against future violations of the FLSA and the NYLL and its regulations; and

j.     Declaring that the liens in question are valid, and the extent and priority of each lien described herein;

k.     Declaring that Plaintiff Lienors acquired a good and valid lien against certain premises at 42-31 Union Street, Flushing, New York 11355, Borough of Queens, County of Queens, State of New York and identified by the Tax Maps as Queens Block No. 5181, Lot No. 15 and upon the interest of any the Defendants X&Y, Fleet, and Xia therein in the sum of each respective lien filed by each of the Plaintiff Lienors;

l.     Adjusting and determining the equities of all the parties to this action and determining that Plaintiff Lienor's lien be deemed to have priority over all other liens and claims against the premises;

m.    Adjudging that Defendants X&Y, Fleet, and Xia, other lienors, and all persons claiming by, through, or under them be forever foreclosed of all equity of redemption or other lien, claim or interest in the premises;

n.    That the premises be sold, as provided by law, and that out of the proceeds of such sale, Plaintiff Lienors be paid the amount of each of their liens and interest, with the expense of the sale and the costs and disbursements of this action, and that Plaintiff Lienors have judgment against the Defendants X&Y, Fleet, and Xia for any deficiency which may remain;

o.    Awarding such other and further relief as this Court deems necessary and proper.

Dated:     February 16, 2022
           New York, New York


                              By:  __/s/ Farrell A. Brody_____
                                     Farrell A. Brody, Esq.

                              TakeRoot Justice
                              123 William Street, Floor 16
                              New York, NY 10038
                              Tel: (646) 459-3075
                              Fax:(212) 619-0653
                              Email: fbrody@takerootjustice.org

                              By:_____
                              Naoki P. Fujita

                              TakeRoot Justice
                              123 William St., 16th Floor
                              New York, NY 10038
                              Tel: (646) 923-8315
                              Email: nfujita@takerootjustice.org

                              By:_____
                              Brian 'Geno' Nettle, Attorney at Law

                              Nettle Law
                              114 Stanton Street, #5
                              New York, NY 10002
                              Tel: (646) 992-9213
                              Email: geno@nettle-law.com

                              *Attorneys for Plaintiffs*