UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROBIN ENRIQUE MOLINA, *et al.*,

                    Plaintiffs,

            v.

RICHARD XIA, a/k/a YI XIA, FLEET
FINANCIAL GROUP, INC., *et al.*,

                   Defendants.
------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

22-CV-864
(Chen, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Before this Court, on a referral from the Honorable Pamela K. Chen, United States District

Judge, is Plaintiffs'[1] May 12, 2025 motion for default judgment against the sole remaining

defendant in this action, Gotham Framing, Inc. ("Gotham Framing"). *See* Dkt. No. 88; *see also*

Referral Order dated May 13, 2025.

      For the reasons set forth below, the undersigned respectfully recommends that Plaintiffs'

motion be granted in part and denied in part, and that judgment be entered, jointly and severally,

against Gotham Framing. Additionally, the undersigned respectfully recommends that Plaintiffs'

sixth and seventh causes of action be dismissed without prejudice.[2]

## I.    Pertinent Background

      The following facts—taken from the Second Amended Complaint, Plaintiffs' motion,

Plaintiffs' affidavits, and the attachments filed in support thereof—are assumed true for the

---

[1] There are thirteen plaintiffs in this action: Robin Enrique Molina, Alexander Franco Arango, Castro Hernandez Breiner Andres, Gloria Mabel Alvarenga Yanez, Josue Cuevas, Juan Pablo Castillo Marca, Liz Natalia Alvarenga Pereira, Manuel Andres Martinez Ruiz, Sebastian Ignacio Veas Diaz, Wilfredo Ramos Ortiz, Betzabeth Thalía Urrutia Fernandez, Carlos Almarza, and Francisco Cortes.

[2] Alexa M. Marsh, a judicial intern who is a third-year law student at The George Washington Law School, is gratefully acknowledged for her assistance in the research of this Report and Recommendation.

purposes of this motion. *See NYQF Inc. v. Sigue Corp.*, No. 24-CV-3699 (AMD) (JAM), 2025 WL 1142154, at *1-*2 (E.D.N.Y. Apr. 21, 2025) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)), *report and recommendation adopted*, 2025 WL 1303864 (E.D.N.Y. May 6, 2025).

Plaintiffs bring this action against Defendants Richard Xia a/k/a Yi Xia, Fleet Financial Group, Inc. X & Y Development Group, LLC Perini Group, Inc. (together, the "Xia Defendants") and Gotham Framing (collectively, "Defendants") in connection with their work at a mixed-use tower building called the Eastern Mirage at 42-31 Union Street in Flushing, New York ("the Worksite") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, New York Labor Law ("NYLL") §§ 650 *et seq.*; and the Lien Laws of the State of New York. *See generally* Dkt. Nos. 36, 89.

On December 20, 2024, Plaintiffs and the Xia Defendants entered into a settlement in principle. Dkt. No. 78. On March 24, 2025, following a fairness hearing held pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Court approved the settlement agreement between Plaintiffs and the Xia Defendants. *See* Text Order, dated March 24, 2025.[3]

Plaintiffs previously moved for default judgment against, *inter alia*, Gotham Framing on March 13, 2024 (Dkt. No. 48); the Court denied the motion on August 5, 2024. See Dkt. No. 58. Plaintiffs again moved for default judgment against Gotham Framing on October 4, 2024. Dkt. No. 65. On April 10, 2025, following a discussion with the Court regarding deficiencies in their motion, Plaintiffs voluntarily withdrew their motion without prejudice. See Minute Entry dated April 10, 2025.

---

[3] For purposes of the motion for settlement approval only, Plaintiffs and the Xia Defendants consented to the undersigned's jurisdiction. *See* Dkt. No. 82.

On May 12, 2025, Plaintiffs moved for the present default judgment against Gotham Framing. *See* Dkt. No. 88. On September 4, 2025, Plaintiffs re-asserted their willingness to seek default judgment against Gotham Framing, notwithstanding Judge Chen's May 13, 2025 order in the parallel action *Securities Exchange Commission v. Xia*, et al., Dkt. No. 21-CV-5350 (PKC) (JAM) ("SEC Action"), whereby the Court ordered the release of settlement funds to the instant Plaintiffs. *See* Dkt. No. 96.

Plaintiffs' factual assertions are set forth below.

Gotham Framing is a corporation "organized under the laws of the State of New York" with its principal place of business and address for service of process located at 121-49 6th Avenue, Floor 2, College Point, New York. Second Am. Compl. ¶ 65, Dkt. No. 36. The Second Amended Complaint alleges that at all pertinent times, Gotham Framing was engaged in interstate commerce under the FLSA as defined in 29 U.S.C. § 203(s), with an annual gross sales volume of not less than $500,000. *Id.* ¶¶ 66-69.

Gotham Framing was hired as a sub-contractor by the Xia Defendants to provide construction work personnel to perform work at the Xia Defendants' property site to construct the Eastern Mirage, a mixed-use tower building. *Id.* ¶¶ 75-80. Gotham Framing was involved in the joint hiring, joint supervision, and joint payment of each Plaintiff. *Id.* ¶ 81. Gotham Framing employees Junior Santos Sanchez and another employee identified as Byron (last name unknown) acted as foremen for Defendants at the worksite. *Id.* ¶ 82.

In December 2019, Defendants hired Plaintiffs as construction workers where their primary work responsibilities consisted of installing sheetrock, plastering, and framing at the Worksite. *Id.* ¶¶ 98-100. Plaintiffs were hired by Defendants at rates ranging from $15 per hour to $25 per hour. *Id.* ¶¶ 101, 115, 143, 157, 171, 185, 213, 227, 241, 255, 269. Plaintiffs regularly worked for

Defendants five days per week, from approximately 7-7:30 a.m. to 4-5:00 p.m. *Id.* ¶¶ 102, 116, 130, 144, 158, 172, 186, 200, 214, 228, 242, 256. Certain shifts lasted longer than nine hours, and Plaintiffs occasionally worked on Saturdays in addition to their Monday through Friday schedules. *Id.* ¶¶ 105, 119, 133, 147, 161, 175, 189, 203, 217, 231, 245, 259. "On at least one occasion,"[4] Plaintiffs allegedly worked more than forty hours per week but were only paid their hourly rate for the time they worked. *Id.* ¶¶ 106, 120, 134, 148, 162, 176, 190, 204, 218, 232, 246, 260, 274. Plaintiffs allege they were never paid at a rate of time and a half for the additional hours they worked, in violation of statutory overtime pay requirements for work exceeding forty hours a week under the FLSA and the NYLL. *Id.* ¶¶ 107, 121, 135, 149, 163, 177, 191, 205, 219, 233, 261, 275.

On January 8, 2020, Plaintiffs Molina and Cuevas approached Defendants present at the Worksite and demanded that Defendants pay Plaintiffs their wages owed. *See* Dkt. No. 36 ¶¶ 280-281. In response, Defendant Xia directed employees of Gotham Framing to refuse Plaintiffs' requests for wages and tell Plaintiffs that work was now canceled for all Plaintiffs demanding their wages. *Id.* ¶ 285. Plaintiffs Molina, Franco Arango, Breiner Andres, and Cuevas refused to leave the Worksite until they received their wages. *Id.* ¶¶ 287-290. In response to Plaintiffs' refusal to leave, Defendant Xia told an employee to call the police. *Id.* ¶ 292. Police officers arrived and instructed Plaintiffs to leave the Worksite and return the following morning to discuss the wage dispute. *Id.* ¶¶ 294-295. When Plaintiffs returned the following morning, the Worksite was locked, and Plaintiffs' employment were terminated. *Id.* ¶ 298.

## II.  **Standard for Default Judgment**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first

---

[4] Each plaintiff's affidavit cites to the week beginning December 15, 2019 as the week that they worked more than forty hours. *See* Dkt. Nos. 90-7-19.

step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nonetheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010). "Courts have significant discretion in granting default judgments and consider the following factors: (1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Canon U.S.A., Inc. v. Sysorex Gov't Servs., Inc.*, No. 23-CV-8001 (DLI) (LGD), 2024 WL 1914347, at *3 (E.D.N.Y. May 1, 2024) (internal citations omitted); *see also Enron Oil Corp.*, 10 F.3d at 96; *Franco*, 2010 WL 3780972, at *2 (listing factors).

III.    **Jurisdiction and Venue**

The Court "must [ ] satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*,

629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.    Subject Matter Jurisdiction

Federal district courts have original subject matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States."  28 U.S.C. § 1331.  Plaintiffs' first, second, and third causes of action, brought under the FLSA, allege unpaid minimum wages, unpaid overtime wages, and retaliation, respectively.  Dkt. No. 36 ¶¶ 324-344.  Nothing in the record suggests that Plaintiffs' FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, wholly insubstantial, or frivolous.  *Cf. A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022).

This action thus arises under the laws of the United States, which gives the Court subject matter jurisdiction over Plaintiffs' first, second, and third causes of action.  *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014) (stating that the FLSA claims arose under the laws of the United States and thus established subject matter jurisdiction); *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 239 (E.D.N.Y. 2024) (finding FLSA claims conferred the court with subject matter jurisdiction).

The Court also has supplemental jurisdiction over Plaintiffs' fourth, fifth, and eighth causes of action brought under the NYLL[5] and over Plaintiffs' ninth cause of action brought under New York Lien Law.[6]  *See* Dkt. No. 36 ¶¶ 345-382.  Supplemental jurisdiction extends to state law

---

[5] Plaintiffs' fourth cause of action includes claims under NYLL for unpaid minimum wages.  Plaintiffs' fifth cause of action includes claims under NYLL for unpaid overtime.  Plaintiffs' eighth cause of action includes claims under NYLL for retaliation.  *See generally* Dkt. No. 36 at 42-46.

[6] In the Second Amended Complaint, Plaintiffs states that their ninth cause of action under New York Lien Law is against "the Defendants."  *See* Dkt. No. 36 at 46.  In the Prayer for Relief section of the Second Amended Complaint, however, Plaintiffs only sought relief regarding the liens from the Xia Defendants.  *See Id.* at 49.  In Plaintiffs' exhibits filed in support of their second motion for default judgment against all

claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[ ]." *Achtman v. Kirby, McInerney & Squire*, *LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Here, supplemental jurisdiction clearly extends to the fourth, fifth, and eighth causes of action, for unpaid minimum wages, unpaid overtime wages, and retaliation. (Dkt. No. 36 ¶¶ 345-374), because they virtually overlap with Plaintiffs' first, second, and third claims seeking recovery for the same violations under the FLSA.

The Court, however, lacks subject matter jurisdiction over Plaintiffs' sixth and seventh causes of action, in which Plaintiffs allege violations of notice and record keeping and wage statement requirements. *See* Dkt. No. 36 at ¶¶ 358-69. In short, Plaintiffs lack standing to pursue these claims in federal court.

Article III of the United States Constitution restricts federal court power to hearing "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1. A case or controversy cannot exist if the plaintiff lacks a personal stake, or "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in

---

Defendants, Plaintiffs included their notices under mechanics' lien law which state "[t]he lienors are claiming a lien against Richard Xia, Fleet Financial Group, Inc., and X & Y Development Group, LLC[ ]." *See generally* Dkt. No. 66-21. Plaintiffs' current memorandum of law submitted in support of their motion for default judgment against only Gotham Framing makes no mention of the mechanics' lien. *See* Dkt. No. 89. Therefore, Plaintiffs claimed their mechanics' lien against only the Xia Defendants and Plaintiffs' ninth cause of action will not be discussed in this Report and Recommendation.

fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Standing is not "dispensed in gross." *TransUnion*, 594 U.S. at 431.  Rather, the plaintiff must show standing separately for each claim asserted. *Id.*  "[S]tanding is a threshold matter of justiciability, and if a plaintiff lacks standing to sue, the Court has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction."  *Dunston v. Piotr & Lucyna LLC*, No. 21-CV-6402 (AMD) (SJB), 2023 WL 5806291, at *4 (E.D.N.Y. July 26, 2023) (quoting *Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC), 2022 WL 3701508, at *4 (S.D.N.Y. Aug. 26, 2022)), *report and recommendation adopted*, 2023 WL 5806253 (S.D.N.Y. Sept. 7, 2023).  "Like all subject matter issues, standing can be raised *sua sponte*." *Id.* (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

"[A] plaintiff must establish Article III standing for *all* of his claims, whether or not the Court also has supplemental jurisdiction."  *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *3 (E.D.N.Y. Feb. 24, 2023) (emphasis in original), *aff'd*, 113 F.4th 300 (2d Cir. 2024).  Although a court may hear state claims if they "derive from a common nucleus of operative facts," a Court cannot "discern or speculate which of the 'operative facts' establish an injury to [a plaintiff] on his NYLL wage notice and wage statement claims." *Id.* (internal quotations and citations omitted).

Here, Plaintiffs do not allege facts linking any legally cognizable injury that they personally experienced as a result of Gotham Framing's purported failure to provide wage statements or purported failure to provide Plaintiffs with notice of their rate of pay, regular pay day, and such other information, as required by the NYLL.  *See Beh v. Cmty. Care Companions Inc.*, No. 19-

CV-01417 (JLS) (MJR), 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022) ("While the deficiencies in defendants' provisions of hiring notices may amount to violations of the labor law, neither plaintiffs nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court"), *report and recommendation adopted*, 2023 WL 1969370 (W.D.N.Y. Jan. 26, 2023). The Second Amended Complaint instead merely alleges that Defendants failed to comply with these statutory mandates. *See* Dkt. No. 36 ¶¶ 361-362, 367-368.

Since the Supreme Court issued its decision in *TransUnion*, "courts throughout the Second Circuit have [ ] found no standing in cases, such as the instant case, where [the p]laintiffs have not established any injury traceable to violation of the wage notice and statement requirements." *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 55 (S.D.N.Y. 2023) (collecting cases); *see also Lucero v. Shaker Contractors, Corp.*, No. 21-CV-8675 (LGS), 2023 WL 4936225, at *3 (S.D.N.Y. July 27, 2023) ("Courts in this District have applied *TransUnion* to find plaintiffs lack standing to bring claims under the NYLL's wage notice and wage statement provisions when those plaintiffs do not make specific allegations of concrete injuries they suffered as a result of their employers' failure to provide required wage records.").

Indeed, Plaintiffs present no cognizable theory as to how they were injured by Defendant's failure to provide the required documents. Indeed, neither the Second Amended Complaint nor Plaintiffs' memorandum of law in support of this motion identifies that they suffered any specific and concrete injury caused by these alleged deficiencies. Dkt. Nos. 13 ¶¶ 61, 66-67; 28 at 12; Dkt. Nos. 36 ¶ 16; 89 at 9-14. Without concrete allegations of harm, Plaintiffs' argument is entirely speculative. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 311 (2d Cir. 2024) (finding that the plaintiff lacked standing to sue for a violation of NYLL § 195 "[w]ithout plausible allegations

10

that he suffered a concrete injury because of [the defendant's] failure to provide the required notices and statement").

A 2024 decision in this district styled *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239 (E.D.N.Y. Mar. 29, 2024) is illustrative here.  In *Cao*, the plaintiffs, former employees of the defaulting defendants who were in the wedding planning business, alleged that their former employers violated the FLSA and the NYLL by, *inter alia*, not providing them with "wage notice at the time they were hired in English and in their primary language, Chinese.  Plaintiffs also allege that they did not receive written wage statements with their pay." *Id.* at 294.  The district court held that the plaintiffs were unable to show that they had standing to bring these claims, because they had "neither plead, nor established via their affidavits and declarations, that they suffered a concrete injury resulting from Defaulting Defendants' alleged failure to provide them with wage notices or statements.  Instead, Plaintiffs merely allege[d] that Defaulting Defendants failed to provide them with wage notice and wage statements, averring that these failures entitle them to statutory damages." *Id.* at 295.  "Absent any factual allegations of a concrete injury fairly traceable to Defaulting Defendants' failure to provide wage notices or wage statements, Plaintiffs' claims, as alleged in the Second Amended Complaint, do not demonstrate Article III standing." *Id.*

As in *Cao*, Plaintiffs here have not shown that they suffered concrete injuries resulting from Defendant's purported violations of the NYLL's wage statement and wage notice requirements.  Thus, Plaintiffs lack Article III standing to pursue their sixth and seventh causes of action. *See, e.g.*, *Vazquez v. Cousins Grocery & Grill Inc.*, No. 21-CV-4528 (RML), 2025 WL 1384069, at *9 (E.D.N.Y. May 13, 2025) (finding that the plaintiff's wage notice and statement claims are dismissed for lack of standing); *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA) (MMH), 2024 WL 1342739, at *1 (E.D.N.Y. Mar. 29, 2024) ("Plaintiff

lacks standing to pursue his claims that [the defendant] violated the NYLL's wage notice and wage statement provisions because [p]laintiff had not adequately pleaded a tangible injury resulting from [the defendant's] failure to provide the required notices."); *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB) (MMH), 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024); *Saavedra v. Dom Music Box Inc.*, No. 21-CV-6051 (ENV) (JAM), 2024 WL 208303, at *5 (E.D.N.Y. Jan. 19, 2024), *report and recommendation adopted*, (Text Order dated Mar. 13, 2024); *Esquivel*, 2023 WL 6338666, at *11 (dismissing the plaintiff's NYLL wage notice and wage statement claims without prejudice); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to [d]efendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim." (citation omitted)); *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("While those may be technical violations of the NYLL, neither [p]laintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action.").

Because Plaintiffs lack standing, the Court lacks subject matter jurisdiction over wage notice and wage statement claims under the NYLL.  Accordingly, the undersigned respectfully recommends that Plaintiffs' sixth and seventh causes of action be dismissed without prejudice.

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *5 (E.D.N.Y. Dec. 22, 2023) ("A court may not enter default judgment unless it has jurisdiction over the person of the party

against whom the judgment is sought, which also means that he must have been effectively served with process." (internal quotations and citation omitted)), *report and recommendation adopted*, (Text Order dated Jan. 9, 2024).

Here, the Court has personal jurisdiction over Gotham Framing.  First, Plaintiffs properly served Gotham Framing, a New York company, by delivering copies of the Summons, Amended Complaint, and Second Amended Complaint to the New York Secretary of State.  *See* Dkt. Nos. 15-16, 51; *see also* Fed. R. Civ. P. 4(h)(1)(A); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).  "[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Second, New York State has general jurisdiction over its residents.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016) ("A state has [ ] general jurisdiction over its residents.").  Gotham Framing is a New York corporation with its principal place of business in College Point, New York. *See* Dkt. No. 36 ¶ 65.  New York courts may exercise jurisdiction over corporations formed under its laws and operating within the state.  *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)); *see also* N.Y. C.P.L.R. § 301.  New York courts may also exercise jurisdiction over non-domiciliary corporations or individuals "who transact[ ] business within the state" so long as "the cause of action arises from that transaction."  *Id.* (quoting *Licci*, 673 F.3d at 60).  Gotham Framing was also involved in the joint hiring, joint supervision, and joint payment of each Plaintiff, and therefore transacts business in New York.  *See* Dkt. No. 36 ¶¶ 81.

Accordingly, the undersigned respectfully recommends that the Court may exercise personal jurisdiction over Gotham Framing.

### C.    Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Here, Plaintiffs assert that venue is proper in the Eastern District of New York because "a substantial part of the events or omissions giving rise to the claims occurred in this [D]istrict."  Dkt. No. 36 ¶ 17.

Accordingly, the undersigned respectfully recommends a finding that venue is proper in this district under 28 U.S.C. § 1391(b)(2).

### IV.    **Procedural Compliance with Federal Rules and Local Civil Rules**

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Co. v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotations and citation omitted).

### A.    Service of Process

The Court finds that Plaintiffs properly served the Summons and Second Amended Complaint on Gotham Framing.  Federal Rule of Civil Procedure 4(h)(1)(B) allows for service on a corporation "by delivering a copy of the summons and of the complaint to an officer, managing

or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Federal Rule of Civil Procedure 4(e)(1) permits a party to effect service in accordance with the rules of the state where the district is located or where service is made. Fed. R. Civ. P. 4(e)(1). State law permits a party to effect service by delivering the summons and complaint to the New York Secretary of State as an agent of the corporation. N.Y. Bus. Corp. Law § 306(b)(1).

Here, Plaintiffs served Gotham Framing with notice of this action by their process server delivering the Summons and Second Amended Complaint to an agent in the Office of the Secretary of State authorized to accept service for Gotham Framing. *See* Dkt. Nos. 15-16, 51. Thus, Plaintiffs properly served Gotham Framing.

**B.      Entry of Default**

The Court next finds that the Clerk of Court properly issued a certificate of default as to Gotham Framing. Because Gotham Framing was served on April 26, 2022, Gotham Framing was required to answer or otherwise respond to the First Amended Complaint by May 17, 2022. *See* Dkt. No. 16; *see also* Fed. R. Civ. P. 12(a)(1)(A)(i). Gotham Framing failed to file an Answer. Dkt. No. 89 at 2. After Plaintiffs filed their Second Amended Complaint on July 28, 2023, Gotham Framing still did not file an Answer. *See* Dkt. No. 36. On September 6, 2023, the Court ordered all Defendants to provide full and completed responses to Plaintiffs' request for interrogatories and documents. *See* Text Order, dated September 6, 2023. When Defendants failed to do so, Plaintiffs requested that the Clerk of the Court issue certificates of default. *See* Dkt. No. 42.

On December 28, 2023, the Clerk of Court issued a Certificate of Default against all Defendants. *See* Dkt. No. 45. On March 13, 2024, Plaintiffs filed their Motion for Default Judgment against all Defendants. *See* Dkt. No. 48. Plaintiffs did not file a memorandum of law

with their motion for default judgment but instead filed an affidavit by their attorneys in support of the default judgment motion. *See* Dkt. No. 51. On March 25, 2024, new counsel for the Xia Defendants sought an extension to respond to Plaintiffs' default judgment. *See* Dkt. Nos. 52-53. On April 15, 2024, the Xia Defendants filed a cross-motion to vacate the Clerk's entry of default and a memorandum of law in support of their opposition to Plaintiffs' default judgment motion. *See* Dkt. Nos. 55-56. Finally, on April 22, 2024, Plaintiffs filed a reply memorandum of law in support of their motion for default judgment and attorneys' fees. *See* Dkt. No. 57 at 9. Gotham Framing has not responded to neither of the Amended Complaints nor to Plaintiffs' motions for default judgment and attorneys' fees. *See* Dkt. No. 58 at 3.

On August 5, 2024, Judge Chen granted the Xia Defendants' cross-motion to vacate the entry of default and denied Plaintiffs' motions for default judgment and attorney fees. *See* Dkt. No. 58 at 2-3. Plaintiffs' motion for default judgment was denied because Plaintiffs failed to file a memorandum of law with their motion for default judgement, pursuant to Local Rule 7.1. *See Id.* at 4. "Although Plaintiffs' counsel submitted "an attorney declaration in support and the declarations of thirteen Plaintiffs [containing] the factual information and legal bases for establishing liability and damages under the FLSA and NYLL," (Dkt. No. 57 at 4 (citing Dkt. Nos. 48, 49, and 49-7 to 49-18)), such an affirmation does not take the place of a memorandum of law, *see Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA) (RER), 2022 WL 18809176, at *3 (E.D.N.Y. Dec. 16, 2022) ("Although Plaintiff's counsel submitted an attorney declaration in support of the Motion containing his legal argument, such an affirmation does not take the place of a memorandum of law."), *report & recommendation adopted*, 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023); *Dejana Indus., Inc. v. Village of Manorhaven*, No. 12-CV-5140 (JS) (SIL), 2015

WL 1275474, at *3 (E.D.N.Y. Mar. 18, 2015) ("[U]nder Local Civil Rule 7.1, legal argument must be set forth in a memorandum of law, not in an attorney affirmation.")." *Id.* at 4-5.

While the Court denied Plaintiffs' motion for default judgment and granted the Xia Defendants' cross-motion to vacate, the Court granted Plaintiffs leave to renew their motions for default judgment and attorneys' fees against Gotham Framing within sixty days of the order, "and can do so on the basis of the certificate of default previously issued by the Clerk of Court against all Defendants." *Id.* at 7. Accordingly, the Clerk's entry of default against Gotham Framing was proper pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

On October 4, 2024, Plaintiffs filed their renewed motion for default judgment and attorneys' fees. *See* Dkt. Nos. 65-67. On October 7, 2024, Judge Chen referred Plaintiffs' motion for default judgment to the undersigned. *See* Text Order, dated October 7, 2024. On October 9, 2024, Judge Chen denied Plaintiffs' motion for attorneys' fees. *See* Text Order, dated October 9, 2024. On October 28, 2024, Plaintiffs were ordered to file a memorandum in support of their motion for default judgment (Dkt. No. 65) by November 4, 2024 and to "serve a copy of their entire motion for default judgment, as well as the present order, on Gotham Framing Inc." *See* Text Order, dated October 28, 2024. On October 29, 2024, Plaintiffs filed their memorandum of law in support of their motion for default judgment (*see* Dkt. No. 71), and on October 31, 2024, Plaintiffs served Gotham Framing. *See* Dkt. No. 72.

### C.    Local Civil Rules 7.1 and 55.2

Local Civil Rule 7.1 requires that a plaintiff attach to a motion for default (1) a notice of motion specifying the applicable rules or statutes pursuant to which the motion is brought; (2) a memorandum of law setting forth the cases and other authorities relied upon in support of the

motion; and (3) supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion.  *See* L. Civ. R. 7.1.

As stated above, Plaintiffs failed to file a memorandum of law with their motion for default judgement, pursuant to Local Rule 7.1. Dkt. 58 at 4.  This resulted in the denial of Plaintiffs' first motion for default judgment.  *Id.*  Plaintiffs' second motion for default judgment also did not include a memorandum of law.  *See* Dkt. Nos. 65-68.  Plaintiffs became compliant with Local Rule 7.1 on November 1, 2024 after filing their memorandum of law in support of their default judgment motion on October 29, 2024 (Dkt. No. 71) and serving Gotham Framing their complete motion for default judgment and supporting documents on October 31, 2024.  *See* Dkt. No. 72.

During a status conference on April 10, 2025, Plaintiffs voluntarily withdrew their second motion for default judgment against Gotham Framing (Dkt. No. 65), without prejudice, and were directed to file a renewed motion by May 12, 2025.  *See* Minute Entry, dated April 10, 2025. Plaintiffs' renewed motion shall comply with Local Rule 7.1(a)(2), which states that motion shall contain, "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined."  Specifically, Plaintiffs' renewed motion must sufficiently demonstrate Gotham Framing's liability under the NYLL and the FLSA.  *Id.*  Plaintiffs' current motion for default judgment is now compliant with the procedural requirements set forth in Local Rule 7.1 by filing a notice of motion (Dkt. No. 88), a memorandum of law (Dkt. No. 89), and affidavits and exhibits (Dkt. Nos. 89-91) in support of the motion.

Local Civil Rule 55.2(b) requires that a plaintiff attach to a motion for default judgment the Clerk's certificate of default, a copy of the Complaint, and a proposed form of default judgment.  L. Civ. R. 55.2(b).  Local Civil Rule 55.2(c) also requires that all papers submitted in

connection with a motion for a default judgment be mailed to the "last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)." L. Civ. R. 55.2(b)-(c).

Per Local Civil Rule 55.2(b), Plaintiffs have attached to their motion for default judgment, the Clerk's certificates of default, a copy of the Complaint, First Amended Complaint, and Second Amended Complaint, and a proposed form of default judgment. Dkt. Nos. 90-1-4; 90-22. Per Local Civil Rule 55.2(c), Plaintiffs have mailed all papers submitted in connection with the motion for a default judgment to the "last known business address" of Gotham Framing. Dkt. No. 92.[7]

Accordingly, the undersigned respectfully recommends that the Court find that Plaintiffs have satisfied the jurisdictional requirements to proceed with their motion under Local Civil Rules 7.1 and 55.2.[8]

## V.    Liability under the FLSA and NYL

### A.    Statute of Limitations

As a threshold matter, the Court considers whether Plaintiffs' claims are timely under the applicable statutes of limitations. *See Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). "The FLSA and the

---

[7] Plaintiff mailed all papers submitted in connection with the motion for a default judgment to both known addresses for Gotham Framing.

[8] The Servicemembers Civil Relief Act ("SCRA") requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931; see also Windward Bora, LLC v. Ortiz, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022) (noting that such an affidavit is absolutely mandatory), report and recommendation adopted, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012) (citation omitted). This requirement is not applicable in this case because Gotham Framing is a corporate defendant. Accordingly, the undersigned respectfully recommends that the Court find that Plaintiffs have satisfied the jurisdictional requirements to proceed with their motion.

NYLL have different statutes of limitations." *Chen*, 2023 WL 2583856, at *8. "The FLSA statute of limitations is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Id.* (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez*, 2011 WL 4962397, at *2 (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398, at *11 (E.D.N.Y. June 24, 2010), *report and recommendation adopted*, 2010 WL 2927403 (E.D.N.Y. July 19, 2010)). "For an employer's actions to be willful, the employer must have 'either [known] or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *See Lorenzo v. 12 Chairs BYN, LLC et al.*, No. 22-CV-947 (PKC) (TAM), 2024 WL 1174426, at *3 (E.D.N.Y. Mar. 19, 2024) (citing *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008)). For example, in an FLSA action where the plaintiff seeks to recover unpaid wages, the plaintiff has the burden of producing "'sufficient evidence to show the amount and extent of. . . . uncompensated work as a matter of just and reasonable inference.' The burden then shifts to the employer to show the inference is not reasonable." *See Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *5 (E.D.N.Y. Apr. 7, 2020) (citing *Ramirez*, 568 F. Supp. 2d at 272-73).

Under the NYLL, the statute of limitations is six years. *See* N.Y. Lab. Law § 663(3). "Courts have held that for the purposes of establishing the statute of limitations under FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period." *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 278 (E.D.N.Y. 2015) (quoting *Addison v. Reitman Blacktop Inc.,* 283 F.R.D. 74, 81 (E.D.N.Y.2011)); *see also* 29 C.F.R. § 790.21(b) ("[A] cause of action . . . for unpaid minimum wages or unpaid overtime compensation and for liquidated

damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day.").

Under the NYLL, the period during which Plaintiffs may claim damages for retaliation is two years. *See* New York Lab. Law § 215(2)(a). On March 20, 2020, New York State Governor Andrew Cuomo issued an executive order suspending and tolling "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including. . . . the civil practice law and rules" for thirty days. *See* Dkt. No. 36 ¶ 19; Exec. Order No. 202.8. Governor Cuomo then extended such tolling through seven more executive orders (*see* Exec. Order Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67,), adding up to a 229-day tolling period of any claims and filings made under New York laws. *See* Dkt. No. 36 ¶¶ 20-21. "Because of the 229-day tolling period, the recoverable period under the NYLL for retaliation violations is a period of two years and 229 days back from the date of the filing of this complaint, and thus, runs from Tuesday, July 2, 2019 to date." *Id.* ¶ 25; *see Winbush v. New York City Dep't of Educ.*, No. 23-CV-1320 (LTS), 2025 WL 2624350, at *11 (S.D.N.Y. Sept. 10, 2025) ("Governor Cuomo [] extended the tolling period until November 3, 2020, ultimately tolling the statute of limitations for a total of 229 days.").

When "a plaintiff files an amended pleading, the Court determines the limitations period based on the filing date of the original complaint so long as the amended complaint relates back thereto." *Escobar v. Mahopac Food Corp.*, No. 19-CV-00510 (FB) (JRC), 2025 WL 934906, at *5 (E.D.N.Y. Mar. 5, 2025), *report and recommendation adopted*, 2025 WL 931283 (E.D.N.Y. Mar. 27, 2025); Fed. R. Civ. P. 15(c)(1). The "central inquiry" under Rule 15 of the Federal Rules of Civil Procedure "is whether adequate notice of the matters raised in the amended pleading has

been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Chaohui Tang v. Wing Keung Enters., Inc.*, 210 F. Supp. 3d 376, 409 (E.D.N.Y. 2016) (quoting *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir.2006), as amended (Oct. 3, 2006). "Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs." Slayton, 460 F.3d at 228.

Here, Plaintiffs commenced this action on February 16, 2022. *See* Dkt. No. 1. Plaintiffs filed their First Amended Complaint on April 13, 2022, pursuant to Rule 15(a)(1)(B). *See* Dkt. No. 15. Plaintiffs filed the First Amended Complaint because the original Complaint incorrectly named the defendant as "Gotham Framing" instead of "Gotham Framing, Inc." *See* Dkt. Nos. 15; 17 at 2. "The only change to this complaint was this correction." *See* Dkt. No. 17 at 2. Therefore, the claims in the First Amended Complaint relate back to Complaint "for the purposes of calculating the statute of limitations." *Escobar,* 2025 WL 934906, at *5. Plaintiffs then filed their Second Amended Complaint on July 28, 2023 (Dkt. No. 36), pursuant to then-Magistrate Judge Ramón E. Reyes, Jr.'s Scheduling Order deadline to join new parties or amend pleadings. *See* Dkt. No. 32. Within the Second Amended Complaint, Plaintiffs added Plaintiff Francisco Cortes to the suit. Dkt. No. 36 ¶¶ 36-37. Thus, the Second Amended Complaint also relates back to the Complaint.

The entire period of Plaintiffs' employment is recoverable under the NYLL's six-year statute of limitations and the 229-day tolling period under Governor Cuomo's executive orders. *See Brash v. Richards*, 149 N.Y.S.3d 560, 563 (2d Dep't 2021) ("Therefore, the subject executive orders tolled the time limitation contained in CPLR 5513(a) for the taking of an appeal until November 3, 2020. Accordingly, the notice of appeal, which was served and filed on November 10, 2020, well within 30 days of November 3, 2020, was timely."); *Rafter v. Everlast Sign &*

*Service Inc.*, No. 21-CV-4588 (NRM) (LGD), 2025 WL 2240446, at \*26 (E.D.N.Y. Aug. 6, 2025) ("If a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award that plaintiff damages under the statute providing the greatest amount of relief." (citation modified)); *Hernandez v. JRPAC Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493, at \*31 (S.D.N.Y. June 9, 2016) ("Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA, both because of the higher minimum wage that governed during certain periods and because of the longer period covered by the NYLL.").

The entire period of Plaintiffs' employment is also recoverable under the FLSA's three-year statute of limitations for Gotham Framing's willful conduct. Here, Plaintiffs have asserted that Gotham Framing has willfully failed to pay minimum wages and overtime wages. *See* Dkt. No. 36 ¶¶ 8-9. Plaintiffs support these claims throughout the Second Amended Complaint (*see id.* at 16-33, 39-41), and through sworn affidavits by each plaintiff filed with the motion for default judgment. *See* Dkt. Nos. 90-7 to 90-19.

Plaintiffs have also asserted that Gotham Framing willfully retaliated against Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres by calling the police on the workers who demanded their unpaid wages, barring Plaintiffs from the Worksite, and firing Plaintiffs in response to their requests for wages. *See Id.* ¶ 11. Like the unpaid wage claims, Plaintiffs support the retaliation claims throughout the Second Amended Complaint (*see id.* at 41-42), and through sworn affidavits by Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres. *See* Dkt. Nos. 90-7 to 90-9, 90-11.

As stated above, once Plaintiffs have provided reasonable inferences that willful violations of FLSA have occurred, the burden shifts to Defendants to show that Plaintiffs' inferences are not reasonable. Gotham Framing has not produced any evidence to negate these claims. Over a course

of over three years after being served with the First Amended Complaint, Second Amended Complaint, and Motion for Default Judgment, Gotham Framing has never appeared in this action nor answered or opposed Plaintiffs' pleadings or default judgment motions.  The duration of Gotham Framing's failure to participate in this litigation establishes Gotham Framing's willfulness.  The undersigned respectfully recommends the Court find that the three-year statute of limitations under FLSA for willful conduct applies.

Finally, the NYLL retaliation damages claims are timely.  Plaintiff Molina, Franco Arango, Breiner Andres, and Cuevas demanded their wages on January 8, 2020.  Dkt. No. 36 ¶¶ 280-290. This falls within the period of two years and 229 days back from the date of the filing of the Complaint.  Therefore, Plaintiffs' claims are timely under both the FLSA and the NYLL, and Plaintiffs may recover under both statutes for the entire period of their employment.

## B.    The Employment Relationship under the FLSA

The FLSA is to be "construed [ ] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency."  *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotations and citation omitted).  To plead a cause of action under the FLSA, Plaintiff must establish: (1) that the defaulting defendants are employers subject to the FLSA; (2) the plaintiff is an employee within the meaning of the FLSA; (3) that the plaintiff's employment relationships were not exempted from the statute; and (4) a violation of one of the statute's provisions.  *See Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-1423 (CBA) (PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019) (listing elements), *report and recommendation adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

1.    **Whether Gotham Framing is an Employer under the FLSA**

The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The term "person" in this definition may be an "individual" or "any organized group of persons," including corporations. 29 U.S.C. § 203(a). The FLSA applies to employees who were either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206(a), 207(a).[9] "To be an 'enterprise engaged in commerce,' the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) 'employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person.'" *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM) (MMH), 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (quoting 29 U.S.C. § 203(s)(1)(A)(i)-(ii)); *see also Vazquez*, 2025 WL 1384069, at *2 (E.D.N.Y. May 13, 2025) ("the question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability."). "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations." *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT) (RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017) (citation omitted), *report and recommendation adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

a.    **Gotham Framing**

---

[9] The NYLL lacks this requirement. *See Gangadharan v. GNS Goods & Servs.*, No. 18-CV-7342 (KAM) (MMH), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022) (citing *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *4 (E.D.N.Y. Apr. 1, 2008)).

"A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage." *Chen*, 2023 WL 2583856, at *9 (citation omitted); *see also Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022) ("[F]or employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce[.]").   The enterprise coverage test considers whether the employer "has employees engaged in commerce or in the production of goods for commerce, or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also* 29 U.S.C. § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof").

Local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) ("[T]he test is met if [the] [p]laintiffs merely handled supplies or equipment that originated out-of-state[.]" (quotations and citation omitted)).   The individual coverage test considers the "employment actions" of each plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Rowe*, 2019 WL 4395158, at *4 (citation omitted).

Here, Plaintiffs' allegations satisfy the enterprise coverage test.   Plaintiffs allege that "Upon information of belief" the Corporate Defendant [Gotham Framing] ha[s] been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000." Dkt. No. 36 ¶¶65-66.   Although these allegations are

conclusory on their face, "multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred from the type of business enterprise that it was engaged in interstate commerce." *Marine*, 2022 WL 17820084, at *3 (collecting cases). Indeed, it is reasonable to infer that Gotham Framing, a sub-contractor hired to provide construction work personnel, engaged in interstate commerce given the nature of the trade. *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV) (MMH), 2024 WL 4309775, at *6 ("[C]ourts in this District have routinely inferred, even absent specific allegations, that companies engaged in the construction industry are engaged in interstate commerce.") (internal citations omitted); *see also Kilmchak v. Cardona, Inc.*, No. 09-CV-4311 (MKB) (ARL), 2014 WL 3778964, at *5 (E.D.N.Y. Jul. 31, 2014) (holding that an inference that construction workers "handled goods and materials that moved in interstate commerce" was justified).

Plaintiffs claim that Gotham Framing is also a joint employer with the Xia Defendants under the Second Circuit's six-factor test to determine joint employment. *See* Dkt. No. 89 (citing *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003)). The factors include (1) whether the business's premises and equipment were used for work; (2) whether the contractor had a business that could or did shift from one joint employer to another; (3) the extent to which workers performed a discrete line-job integral to the production process; (4) whether responsibility under the contracts pass from one subcontractor to another without material changes; (5) the degree to which the business supervised the workers' work; and (6) whether the workers worked exclusively or predominantly for the business. *Id.* In *Zheng*, the Second Circuit held that the FLSA recognizes "that a worker may be employed by more than one entity at the same time." *Id.* at 66.

While the Second Amended Complaint makes no mention of the *Zheng* test and the memorandum of law in support of the motion merely states the *Zheng* test without providing any application the test (Dkt. No. 89 at 16), Plaintiffs were employed jointly by the Xia Defendants and Gotham Framing, and they were supervised by Gotham Framing employees Junior Santos Sanchez, and "Byron" at the worksite. *See* Dkt. Nos. 36 ¶¶ 80-83; 89 at 16.

Plaintiffs therefore have sufficiently alleged that they were employed by an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1).

### 2.    Whether Plaintiff is an Employee under the FLSA

An "employee" is likewise broadly defined in the FLSA as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiffs allege they were employed by Gotham Framing and provided work as construction workers at the development/building site for the Eastern Mirage. *See* Dkt. No. 89 at 9. Plaintiffs' allegations satisfy the definition of employee under the FLSA for the purposes of this motion. *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372 (CBA) (VMS), 2019 WL 5694104, at *5-*6 (E.D.N.Y. Aug. 16, 2019) (determining that the plaintiff was an "employee" under the FLSA for entry of default judgment because the complaint alleged that he was employed by defendants), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). Accordingly, Plaintiffs are covered employees under the FLSA.

### 3.    Whether any FLSA Exemption Applies

Finally, Plaintiffs must show that they are not exempt from the FLSA's protections. *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015). "[T]he FLSA contains a litany of exemptions." *Id.* (internal quotations omitted); *see* 29 U.S.C. § 213. These include "bona fide executive, administrative, or professional" employees, "outside salesmen,"

certain seasonal employees, some employees in fishing, agriculture, and small local newspaper employees, among many others. *See id.* An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010). "[T]he burden of invoking these exemptions rests upon the employer." *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n.11 (1960)). An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth,* 768 F. Supp. 2d at 387. How the plaintiff spent his or her time is a factual question, but whether the employee's activities trigger one of the FLSA's exemptions is a legal one. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129-30 (2d Cir. 2020).

Based on their positions as construction workers, Plaintiffs are not exempt from the FLSA's protections. *See Romero v. Floris Constr., Inc.*, No. 16-CV-04282 (PKC) (RLM), 2017 WL 5592681, at *5 (E.D.N.Y. Nov. 20, 2017) ("[c]onstruction workers are non-exempt employees under the FLSA") (citation omitted); 29 C.F.R. § 541.3 ("occupations such as . . . construction workers and laborers are entitled to minimum wage and overtime premium pay under the Fair Labor Standards Act, and are not exempt under the regulations in this part no matter how highly paid they might be"). The FLSA therefore applies to Plaintiffs' claims.

### C.    Employee Relationship under the NYLL

"To recover under the NYLL, Plaintiff must first 'prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations.'" *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 368-69 (E.D.N.Y. 2022) (quoting *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015)); *see also* N.Y. Lab. Law § 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*,

No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); *Tzilin*, 2024 WL 4309775, at *8 ("Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." (citation omitted)).

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Bocon*, 2025 WL 832730, at *7, Gotham Framing is Plaintiffs' employer within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D. Joint and Several Liability

Plaintiffs allege that Gotham Framing is individually and jointly liable for FLSA and NYLL violations. Dkt. No. 36 ¶ 339. "As the Court has found that [defendants] were jointly [plaintiff's] employers, each [d]efendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in [plaintiff's] favor." *Fermin*, 93 F. Supp. 3d at 37 (collecting cases); *see, e.g., Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469 (PKC) (VMS), 2018 WL 5456654, at *11 (E.D.N.Y. Sept. 8, 2018) ("As the Court has found that [the corporate defendant] and [the individual defendant] were jointly [the] [p]laintiff's employers, each [d]efendant is jointly and severally liable under the FLSA and the NYLL for any FLSA and NYLL damages award made in [the] [p]laintiff's favor"); *Pineda v. Masonry Const., Inc.*, 831 F. Supp.

2d 666, 685 (S.D.N.Y. 2011) (finding allegations that an individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an FLSA and an NYLL employer, and to impose joint and several liability with corporate defendant for wage law violations); *Shim v. Millennium Grp., LLC*, No. 08-CV-4022 (FB) (VVP), 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010) (finding both the individual defendants and the corporation to be liable under the FLSA on default judgment where the complaint contained allegations of actions taken collectively by the defendants); *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that a corporate officer who is considered an employer under the FLSA is jointly and severally liable along with the corporation). Here, Gotham Framing was a sub-contractor hired by the Xia Defendants to provide construction work personnel. Dkt. No. 36 ¶¶ 75, 80. The Xia Defendants and Gotham Framing jointly hired, employed, supervised, and paid Plaintiffs. *Id.* at 81.

Accordingly, the undersigned finds that Gotham Framing is jointly and severally liable for Plaintiffs' claims.

### E.    Overtime Claims

While Plaintiffs do not seek reimbursement from Gotham Framing for overtime claims (Dkt. No. 89 at 31), Plaintiffs sufficiently allege that Gotham Framing violated the overtime provisions of FLSA and NYLL. The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she or] he is employed.'" *Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 88 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)). The NYLL includes the same requirement, providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for "working time over 40 hours" during "each workweek." 12 N.Y.C.R.R. § 142-2.2.

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *see also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that the plaintiff worked over 40 hours per week for a specific time period sufficient to establish an overtime claim).

Here, Plaintiffs sufficiently allege that Gotham Framing failed to pay them the requisite overtime pay. As noted above, Gotham Framing was involved in the joint payment of each Plaintiff with the Xia Defendants. Dkt. No. 36 ¶ 81. Plaintiffs allege that they consistently worked in excess of forty hours per week and the Defendants failed to pay lawful overtime wages. *Id.* at 2. Defendants also refused to pay Plaintiffs at all for at least two full weeks of worked performed during the relevant time period. *Id.*

These allegations are sufficient to establish Gotham Framing's liability for failure to pay overtime under both the FLSA and the NYLL. *See Martinez v. Golden Flow Dairy Farms Inc.*, No. 21-CV-2421 (ENV) (MMH), 2024 WL 1242639, at *6 (E.D.N.Y. Mar. 22, 2024) (finding that plaintiff sufficiently alleged an overtime pay based on allegations that defendant had a policy and practice of failing to compensate for all hours worked in excess of forty hours per week at the proper overtime rate); *Newman v. West Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (finding that plaintiff's sworn statement estimating his schedule and pay established he worked over 40 hours a week without time-and-a-half compensation and subjected defendants to liability on default).

Accordingly, the undersigned respectfully recommends that Gotham Framing be found liable for failure to pay Plaintiffs' overtime wages under both the FLSA and the NYLL.

### F.    Unpaid Wage Claims

While Plaintiffs are not "pursu[ing] any claims here for unpaid wages" from Gotham Framing for unpaid wage claims (Dkt. No. 89 at 31), Plaintiffs sufficiently allege that Gotham Framing violated the unpaid wage provisions of FLSA and NYLL.  A plaintiff has the burden to prove that he was improperly compensated for the work he performed, and that the defendant had actual or constructive knowledge of such work.  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).  If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate, as "an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable."  *Id.* at 363; *see Cabrera v. Canela*, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019) ("As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the plaintiff['s] recollection and estimates of hours worked are presumed to be correct." (internal quotations and citations omitted)).

Here, and because Defendants have defaulted, it would be unfair to require Plaintiffs to submit substantial proof of improper compensation given Defendant's non-participation in the instant litigation and Plaintiffs' inability to obtain the relevant employment records through discovery.  *See Cabrera*, 412 F. Supp. 3d at 181; *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

The Second Amended Complaint's allegations are sufficient to establish Gotham Framing's liability for the unpaid wages. Accordingly, the undersigned respectfully recommends that Gotham Framing be found liable for the unpaid wages claim.

### G.    Retaliation Claims

Plaintiffs Molina, Cuevas, Franco Arango, and Breiner Andres also seek to recover based on violations of the retaliation provisions pursuant to the FLSA and NYLL. Dkt. No. 36 ¶¶ 340-344, 370-374. The retaliation provision of the FLSA makes it "unlawful . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C 215(a)(3). Plaintiffs are protected from retaliation under NYLL § 215(1)(a), which provides that, "[n]o employer or his or her agent … or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer or to the commissioner, or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner."

To state a claim for retaliation under FLSA and NYLL, a plaintiff must "plead facts showing a *prima facie* case of retaliation, namely: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *See Porter v. MooreGroup Corp.*, No. 17-CV-07405 (KAM) (VMS), 2020 WL 32434, at *10 (E.D.N.Y. Jan. 2, 2020).

Here, Plaintiffs sufficiently allege retaliation claims under FLSA and NYLL. Plaintiffs allege that the Xia Defendants and Gotham Framing violated the FLSA and NYLL retaliation

provisions by calling the police on Plaintiffs and refusing to allow Plaintiffs to return to work when Plaintiffs demanded their unpaid wages.  Dkt. No. 36 ¶¶ 342, 371.  Plaintiffs allege this retaliation caused them to suffer, "and continue[] to suffer," emotional distress.  *Id.* ¶¶ 343-373.  Here, Plaintiffs were retaliated against by the Defendants when they were discharged from their duties at the worksite upon demanding they be paid their unpaid wages.

Accordingly, the undersigned respectfully recommends a finding that Gotham Framing be found liable for retaliation under the FLSA and the NYLL as alleged in the Second Amended Complaint.

### H.    Wage Statement and Notice Violations

While Plaintiffs do not seek reimbursement from Gotham Framing for wage statement and notice violation claims (Dkt. No. 89 at 31), Plaintiffs insufficiently allege that Gotham Framing violated the relevant NYLL provisions.  "Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, 'the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;' 'the regular pay day designated by the employer;' and the employer's address and telephone number."  *Tzilin*, 2024 WL 4309775, at * (quoting N.Y. Lab. Law § 195(1)(a)).  "The WTPA also requires employers to provide employees with a statement with every payment of wages, listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked."  *Id.* (quoting N.Y. Lab. Law § 195(3)).

As discussed above in Part III.A, the undersigned respectfully recommends that Plaintiffs' claims for Defendant's alleged violations of the NYLL's wage notice and wage statement provisions be dismissed for lack of standing.

## VI.    <u>Damages</u>

As Defendant's liability has been established, the Court next turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, [t]he [C]ourt must be satisfied that [the] [p]laintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (quotations and citation omitted). "That being said, because under FLSA the burden is on an employer properly to record hours, a plaintiff need not compute FLSA damages with precision." *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quotations and citation omitted), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

### A.    **Effect of the Settlement with the Xia Defendants on Unpaid Wages**

As stated above, on March 24, 2024, the Court approved the settlement agreement between Plaintiffs and the Xia Defendants in the amount of $60,000. *See* Dkt. No. 81, Text Order dated March 24, 2025 (approving the settlement pursuant to *Cheeks*, 796 F.3d 199. As Plaintiffs note in their motion, the settlement amount was allocated as $35,114.75 in unpaid minimum, overtime, and regular wages for Plaintiffs, and $24,885.25 in retaliation damages to the four Plaintiffs with retaliation claims: Plaintiffs Molina, Franco Arango, Breiner Andres, and Cuevas. Dkt. No. 89 at 30. Under the March 24, 2024 settlement, each Plaintiff is to receive 100% of their unpaid wages,

and Plaintiffs Molina, Franco Arango, Breiner Andres, and Cuevas are to each receive $6,221.31 out of a total maximum of $20,000 in retaliation liquidated damages recoverable under NYLL § 215. *Id.*

Because Plaintiffs also have claims for liquidated damages for the unpaid wages, prejudgment interest, post-judgment interest, and attorneys' fees, as well as claims for additional retaliation liquidated damages by Plaintiffs Molina, Franco Arango, Breiner Andres, and Cuevas, Plaintiffs here move forward with these claims in their default judgment motion against Gotham Framing. Dkt. No. 89 at 31; *see also* Dkt. No. 90-22 (not seeking unpaid wages in the proposed order of default judgment). In short, Plaintiffs do "not pursue any claims here for unpaid wages." Dkt. No. 89 at 31.

Here, Plaintiffs in this case have settled with the appearing defendants (the Xia Defendants) on an agreed-upon amount of $60,000. Dkt. No. 81. Though Plaintiffs have already settled with the appearing defendants, they still may seek judgment against the non-appearing Gotham Framing. Thus, Plaintiffs here also move forward against their claims for damages against Gotham Framing for amounts that deduct the unpaid wages and retaliation liquidated damages recovered in the settlement with the Xia Defendants. Again, Plaintiffs move forward with these claims in their default judgment motion against Gotham Framing, but do not pursue any claims here for overtime wages or unpaid wages. Dkt. No. 89 at 39.

### B.    Liquidated Damages Under the FLSA and NYLL

Both the FLSA and NYLL generally provide for double (or "liquidated") damages unless the defendant proves a good faith basis to have believed it was complying with the law. *See* 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1). A plaintiff may not recover "duplicative" liquidated damages (*i.e.*, under both the FLSA and NYLL) for the same course of conduct. *Rana*

*v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."). Courts may, however, decline to award liquidated damages where employers "show[ ] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA. *See* 29 U.S.C. § 260.

The NYLL similarly permits employees to recover "an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due" unless the employer provides "a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1). Because "there are no meaningful differences" between the liquidated damages provisions of the FLSA and NYLL, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct." *Rana*, 887 F.3d at 123. "In light of the principle that the law providing the greatest recovery will govern, [a p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (quotations and citation omitted).

Here, Plaintiffs' recovery for liquidated damages is the same under both the FLSA and the NYLL. Moreover, in light of Gotham Framing's default, Gotham Framing has failed to make a showing of good faith. *See Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963 (WFK), 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22, 2019) ("As a result of defendants' default in this action, the record is devoid of evidence of their good faith or reasonable belief."), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019); *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *10 (E.D.N.Y. Mar. 12, 2014)

("Obviously, as a result of [the] defendants' default in this action, the record is devoid of evidence of [the] defendants' good faith or reasonable belief.

Therefore, the undersigned respectfully recommends that liquidated damages be awarded under the FLSA." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 91 (E.D.N.Y. 2012) ("Where, as here, a defendant employer has defaulted, the court plainly cannot find that it has made the showing of good faith necessary to defeat an award of liquidated damages."). Plaintiffs are entitled to 100 percent of their overtime pay and unpaid wages damages as liquidated damages. As Plaintiffs' total eligible liquidated damages are $35,114.75—which represents 100 percent of the settlement between Plaintiffs and Xia Defendants allocated $35,114.75 in unpaid minimum, overtime, and regular wages—the undersigned respectfully recommends that Plaintiffs recover "an additional equal amount as liquidated damages" in the amount of $35,114.75. *See Rodriguez,* 784 F. Supp. 2d at 125; *see also* Dkt. No. 90-22 at 3.

The $35,114.75 comprises the following: Molina is owed $3,800.00 in liquidated damages; Franco Arango is owed $3,000.00 in liquidated damages; Breiner Andres is owed $2,925.00 in liquidated damages; Yanez is owed $2,431.00 in liquidated damages; Cuevas is owed $3,800.00 in liquidated damages; Marca is owed $2,937.50 in liquidated damages; Pereira is owed $2,431.00 in liquidated damages; Ruiz is owed $1,661.00 in liquidated damages; Diaz is owed $2,277.00 in liquidated damages; Ortiz is owed $1,661.00 in liquidated damages; Fernandez is owed $847.50 in liquidated damages; Almarza is owed $3,162.50 in liquidated damages; and Cortes is owed $4,181.25 in liquidated damages. *See* Dkt. Nos. 89 at 32-33; 90-22.

### C.    Plaintiffs Molina, Franco Arango, Breiner Andres, and Cuevas are Entitled to Maximum NYLL Retaliation Liquidated Damages

Plaintiffs also seek a total of $55,114.75 in NYLL retaliation liquidated damages. *See* Dkt. No. 90-22.

Under NYLL § 215(a), Plaintiffs are each permitted to collect a maximum liquidated damages recovery of $20,000. Further, NYLL § 215(a) provides "[t]he court shall award liquidated damages to every employee aggrieved under this section." *Qilliams v. Harry's Nurses Registry, Inc.*, No. 23-cv-6661 (PKC) (TAM), 2025 WL 2481745, at *8 (E.D.N.Y. Aug. 28, 2025) (quoting NYLL § 215(2)(a)). Courts in this Circuit have awarded the maximum award upon a motion for default judgment. *See, e.g., Vazquez v. 142 Knickerbocker Enters., Corp.*, No. 13-CV-6085 (EK) (PK), 2024 WL 4437164, at *17 (E.D.N.Y. Oct. 7, 2024) (noting that "liquidated damages under the anti-retaliation provisions of the NYLL are . . . punitive in nature, given that they flow from a willful retaliatory act[,]" *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 364 (S.D.N.Y. 2014), [and explaining that a "liquidated damages award is warranted here" for each plaintiff); *Brito v. Marina's Bakery Corp.*, 2022 WL 87099 at *12 (E.D.N.Y. March 24, 2022) (awarding maximum NYLL retaliation liquidated damages upon plaintiff's motion for default judgment).

Here, Plaintiffs Molina, Franco Arango, Breiner Andres, and Cuevas each seek $13,778.69 in additional NYLL retaliation liquidated damages after deducting the amount of $6,221.31 from the maximum amount of $20,000 recovered from settling with the Xia Defendants. *See* Dkt. No. 89 at 33. No other Plaintiff seeks retaliation liquidated damages. *See* Dkt. No. 90-22; *see also* Dkt. No. 89 at 25-26. Since Gotham Framing has not answered the Second Amended Complaint, Gotham Framing has not demonstrated any evidence to justify its retaliation.

Therefore, the undersigned respectfully recommends that Plaintiffs Molina, Franco Arango, Breiner Andres, and Cuevas each recover $13,778.69 in additional NYLL retaliation liquidated damages—for a total of $55,114.75 in NYLL retaliation liquidated damages.

### D.    Attorneys' Fees and Costs

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorneys' fees and costs in wage-and-hour actions." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020); *see* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). "The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Cao*, 727 F. Supp. 3d at 299 (internal citations and quotation marks omitted). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Id.*

Plaintiffs have requested attorneys' fees and costs, and have provided filings in support of their motion required in the Second Circuit to support an award of attorneys' fees. *See* Dkt. Nos. 89 at 36-37; 90-12; *see also N.Y. Ass'n for Ret'd Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983) (establishing a requirement for clear, contemporaneous documentation to support a request for attorneys' fees). Plaintiffs' requests attorneys' fees in the amount of $36,890.00 and costs in an amount of $909.70. Dkt. No. 89 at 30; 90 at 21.

### 1.    Hourly Rate

While Plaintiffs' counsel, TakeRoot Justice, is a non-profit organization, counsel is entitled to reasonable fees and costs. *See Blum v. Stenson*, 465 U.S. 886, 894 (1984) ("Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization."). Courts may look to the nature of

representation and type of work involved to determine a reasonable hourly rate.  *See Id.* at 895 n. 11 ("[R]equested rates [must be] in line with those prevailing in the community for *similar services. . . .* " (emphasis added)).

Plaintiffs filed a declaration from Naoki P. Fujita, Senior Staff Attorney at TakeRoot Justice along with supporting time records.  *See* Dkt. No. 90-21.  TakeRoot Director/Supervising Attorney Tito Sinha, who has over 24 years of litigation experience, billed at a rate of $450.00 per hour; Senior Staff Attorney Naoki P. Fujita, who has over 10 years of labor and employment experience, billed at a rate of $325.00 per hour; and former Senior Staff Attorney Farrell Brody billed at a rate of $300.00 per hour.  Dkt. Nos. 89 at 38; 90-21 at 4.

Plaintiffs' requested hourly rate of $450.00 per hour for Tito Sinha's hours of work is in line with awards previous awarded to Sinha in connection with TakeRoot Justice litigation.  *See Sahadeo v. Schwarzwalder*, No. 24-CV-01889 (BMC), 2024 WL 4558009 (E.D.N.Y. Aug. 9, 2024) (approving Sinha's rate of $495.00 for 7.1 hours of work upon settlement); *Small v. Todaro*, No. 20-CV-05068 (JRC), (E.D.N.Y. Dec. 6, 2021) (approving Sinha's rate of $450.00 for 24.3 hours of work upon settlement).  Additionally, Plaintiffs' requested hourly rate of $450.00 for Sinha is in line with rates awarded in this district for attorneys with comparable experience and skill.  *See Almond v. PJ Far Rockaway, Inc.*, No. 15-CV-6792 (FB) (JO), 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) (awarding hourly rate of $450 to an attorney with seventeen years of experience in employment and wage litigation); *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (approving a rate of $450 per hour for lawyer with "significant experience litigating FLSA and NYLL wage and hour lawsuits[.]")

Plaintiffs' requested hourly rates of $325.00 per hour for Fujita's hours of work and $300.00 per hour for Brody's hours of work are also in line with rates awarded in this district for

attorneys with comparable experience and skill.  *See Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020), *report and recommendation adopted*, No. 19-CV-4526 (CBA) (SMG), 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020) ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases.").

Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded an hourly rate of $450.00 per hour for work performed by Sinha, $325.00 per hour for work performed by Fujita, and $300.00 per hour for work performed by Brody.

### 2.    Reasonable Hours Expended

Plaintiffs claim that, as of May 12, 2025, counsel billed 105.40 hours on tasks related to the matter against Gotham Framing.  Dkt. 89 at 30.  Plaintiffs' time record only includes tasks related to Gotham Framing and excludes time spent on litigation with the Xia Defendants.  *Id.*

"The court must assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation." *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 62 (E.D.N.Y. 2024), *report and recommendation adopted*, No. 21-CV-4438 (PKC) (SJB), 2024 WL 4250267 (E.D.N.Y. Sept. 26, 2024) (citing *Nuriddinov v. Masada III, Inc.*, No. 15-CV-5875, 2017 WL 9253401, at *12 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, 2018 WL 1251335, at *1 (Mar. 12, 2018).  A district court is "not obligated to undertake a line-by-line review of [an] extensive fee application.  It may, instead, 'exercise its discretion and use a percentage deduction as a practical means of trimming fat.'"  *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150

(2d Cir. 2014).  Plaintiffs cannot "recover for tasks that only became necessary due to Plaintiffs' own delay."  *Cao*, 727 F. Supp. at 300.

Where counsel "relies on vague entries and block billing, courts are unable to review hours for reasonableness."  *Anderson v. Cty. of Suffolk*, No. 09-CV-1913 (GRB), 2016 WL 1444594, at *6 (E.D.N.Y. 2016).  "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours."  *Cao*, 727 F. Supp. at 299; *see also Anderson*, 2016 WL 1444594, at *6 (noting that some courts have imposed "reductions as high as 40% solely based on billing entries").  Block billing, the practice of "aggregating of multiple tasks into a single entry," "renders it difficult to determine whether, and/or to the extent to which, the work done by . . . attorneys is duplicative or unnecessary." *Dominic Schindler Holding, AG v. Moore*, 20-CV-4407 (RPK) (VMS), 2022 WL 987428, at *9 (E.D.N.Y. Jan. 12, 2022), *report and recommendation adopted*, Order dated Jan. 28, 2022 (citation omitted).

Here, Plaintiffs' requested hours are excessive because, among other things, Plaintiffs seek to be compensated for hours worked on the improperly filed motions for default judgment, and for vagueness and block billing entries.  Counsel seeks attorneys' fees on the first default judgment motion filed on March 13, 2024, which the Court denied on August 5, 2024.  Dkt. Nos. 48, 58, No. 90-21 at 1-2 (Entries dated 2/1/24 to 3/13/24).  Counsel then filed the second default judgment motion on October 4, 2024.  *See* Dkt. No. 65.; But after the April 2025 court conference, in which the undersigned discussed deficiencies in Plaintiffs' motion, Plaintiffs' withdrew that motion.  *See* Minute Entry dated Apr. 10, 2025.  Counsel seeks fees connected with the second default judgment motion as well.  Dkt. No. 90-21 at 1-2 (Entries dated 10/2/24 – 10/4/24). It is unreasonable for

Plaintiffs' counsel to be awarded for time spent on their first and second default motions because they were filed improperly.  *Cao*, 727 F. Supp. 3d at 300.

Further, counsel's vague entries and block billing further justify a reduction in hours requested.  For example, counsel's billing reveal four entries representing several hours  of attorney work time for "Drafting EDNY Complaint."  Dkt. No. 90-21 at 4 (entries dated 1/18/22 – 1/21/22).  The time records demonstrate eight identical entries for "Drafting EDNY complaint[;] [c]ommunicated with clients to confirm details of employment[;]  [o]btain signed legal retainers." *Id.* at 3-4 (entries dated 1/31/22 – 2/9/22).  Such vague, block entries render it "difficult to determine whether, and to the extent to which, the work done [] by attorneys is duplicative or unnecessary." *Dominic Schindler Holding*, 2022 WL 987428, at *9.

Accordingly, the undersigned respectfully recommends an across-the-board reduction of 30% of the hours that Plaintiffs seek as a practical means of reducing the excessive hours, which results in the total number of hours as 73.78 hours.

While the total number of hours is still on the high end, the undersigned notes that this action involved thirteen Plaintiffs, and the time records reflect that translation services were required between Plaintiff and counsel.  Courts in this Circuit have approved billable hour requests in FLSA default judgment cases for significantly more hours than in the instant case. *See e.g.*, *Baltierra v. Advantage Pest Control Co.*, No. 14-CV-5917 (AJP), 2015 WL 5474093, at *13 (S.D.N.Y. Sept. 18, 2015) (approving 108.2 billable hours for an FLSA default judgment case with multiple plaintiffs); *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321 (DLI) (CLP), 2021 WL 7500316, at *15 (E.D.N.Y. Mar. 1, 2021) (approving 106 billable hours for FLSA and NYLL default case); *Janus v. Regalis Const., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *13 (E.D.N.Y. July 23, 2012) (approving 64.2 hours in an FLSA and NYLL default judgment case),

*report and recommendation adopted*, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012); *Rodriguez*, --

F. Supp. 3d --, 2025 WL 2748248, at *24 ("While the present request is admittedly on the high

end of acceptable hours billed in a case of this nature, there are multiple submissions from Mr.

Rapaport and Ms. Gulfo that are representative of the translation services provided by Ms. Gulfo

for meetings between Plaintiff and his counsel.").

Therefore, the breakdown of attorneys' fees is depicted below:

| Individual | Reasonable Hourly Rate | Hours Sought | Reasonable Hours (30% Reduction) | Lodestar |
|---|---|---|---|---|
| Tito Sinha | $450.00 | 28.70 | 20.09 | $9,040.50 |
| Naoki Fujita | $325.00 | 38.60 | 27.02 | $8,781.50 |
| Farrell Brody | $300.00 | 38.10 | 26.67 | $8,001.00 |
| TOTAL | | | | $25,823.00 |

### 3.    Costs

When a party is awarded attorneys' fees, it is also entitled to compensation for "those

reasonable out-of-pocket expenses incurred by attorney and ordinarily charged to their clients."

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quotations omitted).  To recover

these costs, the plaintiff is required to "submit adequate documentary evidence in support." *Tacuri*

*v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb.

24, 2015).

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the

defendant.  *See* 29 U.S.C. § 216(b); NYLL § 663(1).  Ordinarily, plaintiffs may recover "[c]osts

relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare*

*Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).  Only those

costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Gab*

*Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d

930, 933–34 (2d Cir. 1987)).  Expenses incurred from computerized legal research are generally recoverable.  *See Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds & the Trustees of the Local 1010 Apprenticeship, Skill Improvement, and Training Fund v. RICI Corp.*, No. 24-CV-6632 (RPK)(MMH), 2025 WL 2682626, at *11 (E.D.N.Y. Sept. 19, 2025) (awarding plaintiffs for research fees); *Ret. Fund of Loc. 1482 Paint & Allied Prods. Manufacturers v. N. Adhesives, Inc.*, No. 22-CV-5850 (HG) (RML), 2023 WL 7688689, at *7 (E.D.N.Y. June 20, 2023) (awarding plaintiffs costs associated with online research); *Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, No. 23-CV-5262 (LJL), 2024 WL 3409278, at *11 (S.D.N.Y. July 15, 2024) (awarding defendants costs associated with online research; *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (holding that expenses such as "duplicating, postage, telephone, computerized legal research and other office expenses" are ordinarily recoverable and not absorbed into an attorney's fee as overhead).

Here, Plaintiffs request an award of $909.70 in total costs.  *See* Dkt. Nos. 89 at 38; 90-21 at 4-5.  Plaintiffs have submitted adequate documentary evidence in support of their request for reimbursement of their case filing and process server.  *See* Dkt. No. 90-21.  Specifically, Plaintiffs request an award of $402.00 as reimbursement for the case filing fee.  *Id.* at 4.  Plaintiffs request reimbursement of costs incurred in serving Gotham Framing with both the summons, Complaint, Second Amended Complaint, default judgment motion and attachments thereto.  *Id.*  Plaintiffs' request for reimbursement for costs associated with "PACER Legal Research" in the amount of $396.10 is granted because computerized legal research is generally recoverable.[10]

---

[10] Plaintiffs seek reimbursement for costs associated with "PACER Legal Research" on November 1, 2022 in the amount of $34.90, February 10, 2023 in the amount of $55.80, April 4, 2023 in the amount of $105.00, August 10, 2023 in the amount of $122.20, and January 4, 2024 in the amount of $78.20.  *See* Dkt. No. 90-21 at 4-5.

The undersigned respectfully recommends that Plaintiffs be awarded $909.70 in costs. *See Rodriguez*, 2025 WL 2748248, at *25 (approving $1,986.32 in costs).

### E.   Pre-judgment Interest

Plaintiffs seek pre-judgment interest on their "compensatory damages under the NYLL." *See* Dkt. No. 89 at 34. For the reasons below, the undersigned respectfully recommends that no pre-judgment interest be awarded here.

"It is well settled that in an action for violations of the [FLSA], prejudgment interest may not be awarded in addition to liquidated damages." *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 382 (E.D.N.Y. 2013) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir. 1988)); *see also Wickham Contracting Co., Inc. v. Local Union 3, Intern. Broth. of Elec. Workers*, 955 F.2d 831, 834 (2d Cir. 1992) (noting that pre-judgment interest is not recoverable on liquidated damages awarded under § 216(b)); *Cuanetl v. Cafe H Inc.*, No. 21-CV-4316 (CBA) (CLP), 2022 WL 4124766, at *15 (E.D.N.Y. Aug. 9, 2022), *report and recommendation adopted*, 2022 WL 4121480 (E.D.N.Y. Sept. 9, 2022) ("Further, pre-judgment interest may not be awarded under the NYLL in addition to liquidated damages that are awarded for violations of the FLSA.") (citation omitted). The Second Circuit, however, has held that both pre-judgment interest and liquidated damages may be awarded under the NYLL, because pre-judgment interest and liquidated damages under the NYLL 'are not functional equivalents' and 'serve fundamentally different purposes.'" *Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *11 (E.D.N.Y. June 11, 2021) (quoting *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)); *see also Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135, 2016 WL 1587242, at *5 (S.D.N.Y. Apr. 19, 2016) (Sullivan, J.) ("Writing nearly two decades ago, the Second Circuit recognized that courts may award pre-judgment interest on non-overlapping NYLL wage claims

even where a plaintiff also received liquidated damages.") (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).

"To avoid giving the plaintiff a windfall, [] courts award pre-judgment interest only on the compensatory damages award and not on the liquidated damages award." *Rodriguez*, 2025 WL 2748248, at *24; *see, e.g., Newman*, 2021 WL 2401176, at *11 (stating that "where a plaintiff has already received an award of FLSA liquidated damages," the plaintiff is "entitled to an award of prejudgment interest only on [damages under the NYLL that do not overlap with those under the FLSA] for which liquidated damages pursuant to the FLSA were not assessed") (citation omitted); *Bedasie v. Mr. Z Towing, Inc.*, No. 13-CV-5453 (CLP), 2017 WL 1135727, at *49 (E.D.N.Y. Mar. 24, 2017) ("Prejudgment interest may be awarded under the NYLL only to amounts awarded under the NYLL that do not overlap with FLSA awards."). In other words, "plaintiff is entitled to prejudgment interest only 'for that portion of unpaid wages for which [plaintiff is] being compensated under state law.'" *Newman*, 2021 WL 2401176, at *11 (quoting *Gortat*, 949 F. Supp. 2d at 382); *Albim v. 1656 Wireless Inc.*, No. 23-CV-1732 (DG) (RML), 2025 WL 2791384, at *11 (E.D.N.Y. Sept. 8, 2025) ("Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law.")).

As noted above, Plaintiffs argue that they are entitled to pre-judgment interest "on the compensatory damages" under the NYLL. Dkt. No. 89 at 34. But Plaintiffs are not seeking any compensatory damages under the NYLL. Indeed, Plaintiffs make clear in their motion that they are not seeking compensatory damages of any kind for unpaid wages. *See* Dkt. No. 89 at 31 (noting that Plaintiffs do "not pursue any claims here for unpaid wages."). Nor are Plaintiffs Molina, Franco Arango, Breiner Andres, and Cuevas seeking compensatory damages for their retaliation claims; instead, those specific plaintiffs are only seeking retaliation liquidated damages under the

NYLL.  In light of the Plaintiffs' position, the Court cannot award pre-judgment interest on compensatory damages that do not exist.  *See, e.g., Alvarez v. Antojitos Food Supply Co.*, No. 22-CV-2815 (PGG) (OTW), 2024 WL 3330545, at *4 (S.D.N.Y. Apr. 5, 2024) ("Interest only accrues as to compensatory damages and is not based on liquidated damages.");  *cf. Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015) (awarding "compensatory damages available under the NYLL: unpaid minimum wages, premium overtime pay, and spread-of-hours pay"); *Martinez v. W. Side Pizza LLC*, No. 18-CV-5834 (JGK) (OTW), 2024 WL 4494884, at *7 (S.D.N.Y. Apr. 4, 2024), 2024 WL 4494432 (S.D.N.Y. Oct. 11, 2024) (awarding pre-judgment interest where the plaintiff sought "pre-judgment interest under the NYLL for *unpaid minimum and overtime wages*") (emphasis added); *Esquivel*, 2023 WL 6338666, at *15 (E.D.N.Y. Sept. 29, 2023) ("Plaintiff is eligible to recover prejudgment interest on compensatory damages *for unpaid wages* available under the NYLL") (emphasis added); *Burns v. Scott*, 635 F. Supp. 3d 258, 282 (S.D.N.Y. 2022), recons. denied, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages.").

Plaintiffs rely on *Heras v. Metro. Learning Inst., Inc.*, No. 19-CV-02694 (DG) (PK), 2025 WL 1166978 (E.D.N.Y. Feb. 28, 2025) in support of their request for pre-judgment interest.  But *Heras* is inapposite.  The plaintiff in *Heras* was seeking compensatory damages for unpaid overtime wages and spread-of-hours pay—which the court awarded.  *See id.* at *15.  Here, in contrast, although Plaintiffs ostensibly allege that they are seeking compensatory damages under the NYLL, Plaintiffs' proposed order of judgment and its motion do not indicate any request for the issuance of compensatory damages, nor is the court recommending any compensatory damages award.

At bottom, given that Plaintiffs have not sought to be compensated under the NYLL for any damages, Plaintiffs cannot be entitled to any pre-judgment interest on a NYLL compensatory damages claim. *See Newman*, 2021 WL 2401176, at *11 (awarding no pre-judgment interest because "plaintiff does 'not have any non-overlapping NYLL claims for which [he is] entitled to damages.'") (citation omitted).

Therefore, the undersigned respectfully recommends that Plaintiffs' request for prejudgment interest be denied.

### F.    Post-judgment Interest

Plaintiffs are entitled to post-judgment interest under 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011) (citing 28 U.S.C. § 1961(a)), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see also Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case). Unlike with respect to pre-judgment interest, § 1961(a) mandates post-judgment interest here because the undersigned recommends a money judgment in connection with Plaintiffs' request for liquidated damages.

Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." *Cabrera*, 412 F. Supp. 3d at 186 (quoting 28 U.S.C. § 1961(a)).

Therefore, the undersigned respectfully recommends that Plaintiffs be awarded post-judgment interest to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See Fermin*, 93 F. Supp. 3d at 52.

## VII.    Conclusion

Accordingly, the undersigned respectfully recommends that Plaintiffs' motion be granted in part and denied in part, and that judgment be entered against Gotham Framing, jointly and severally, in the amounts set forth below:

| Claim | Recommended Award |
|---|---|
| Liquidated Damages | $35,114.75<br><br>Comprising $3,800 for Molina; $3,000 for Franco Arango; $2,925 for Breiner Andres; $2,431 for Yanez, $3,800 for Cuevas; $2,937.50 for Marca; $2,431 for Pereira; $1,661 for Ruiz; $2,277 for Diaz; $1,661 for Ortiz; $847.50 for Fernandez; $3,162.50 for Almarza; and $4,181.25 for Cortes. |
| Retaliation Liquidated Damages | $55,114.76<br><br>Comprising $13,778.69 for Molina; $13,778.69 for Franco Arango; $13,778.69 for Breiner Andres; $13,778.69 for Cuevas. |
| Attorneys' Fees | $25,823.00 |
| Costs | $909.70 |
| Post-Judgment Interest | To be calculated as set forth above. |

Additionally, the undersigned respectfully recommends that Plaintiffs' sixth and seventh causes of action be dismissed without prejudice.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Plaintiffs' counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Gotham Framing and to file proof of service on ECF by October 21, 2025. Copies shall be served at the following addresses:

Gotham Framing, Inc.
Attn: Felix Morales Hernandez
121-49 6th Avenue, Flr. 2
College Point, NY 11356

Gotham Framing, Inc.
857 Oyster Bay Rd.
Bay Short, NY 11706

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Chen. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party waives appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue."); *see generally Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York          **SO ORDERED.**
            October 20, 2025

            _/s/ Joseph A. Marutollo_
            JOSEPH A. MARUTOLLO
            United States Magistrate Judge